## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
**MARISA MINISCALCO and**                 )
**ANTHONY MINISCALCO**                    )
                                          )   **CIVIL ACTION NO. 1:07-cv-1198 (JDB/AK)**
     **Plaintiffs,**   )
                                          )
   **vs.**                       )
                                          )
**ELI LILLY AND COMPANY, et al.,**        )
                                          )
     **Defendants.**   )
_____)

### REPLY IN SUPPORT OF DEFENDANT ELI LILLY AND COMPANY'S
### MOTION TO TRANSFER TO THE DISTRICT OF RHODE ISLAND

Plaintiffs' Opposition to Defendant Eli Lilly and Company's Motion to Transfer ("Plaintiffs' Opposition") does not dispute that most of the alleged events giving rise to plaintiffs' claims, including the alleged prescription, purchase, and ingestion of DES, occurred in the District of Rhode Island. Nor does it dispute that all of the non-expert witnesses in this case, including plaintiffs, plaintiff Marisa Miniscalco's mother and father, and plaintiff Marisa Miniscalco's treating physicians, are located in the District of Rhode Island. Plaintiffs' arguments regarding factors such as travel convenience for plaintiffs' experts, Lilly's previous litigation of an insurance claim in the District of Columbia, and Lilly's governmental contacts here have no significant bearing on a motion to transfer under 28 U.S.C. Section 1404(a) and have been rejected by this Court. As set forth in Lilly's Memorandum in Support of its Motion to Transfer and below, an analysis of <u>relevant</u> factors and controlling authority supports transfer of this case to the United States District Court for the District of Rhode Island.

I.    **RHODE ISLAND IS A MORE CONVENIENT FORUM FOR THE PARTIES AND WITNESSES**

Plaintiffs' assertion that Lilly has presented merely a "vague laundry list of mostly insignificant nonparty contacts" ignores the fact that both of the plaintiffs and all of the expected non-expert witnesses live within the District of Rhode Island. (Pls.' Opp. 1.) As such, Rhode Island is a more convenient forum for the parties and witnesses. Plaintiffs Marisa and Anthony Miniscalco live in Rhode Island. Plaintiff Marisa Miniscalco's mother and father live in Rhode Island. All of plaintiff Marisa Miniscalco's treating physicians, who allegedly diagnosed and treated her alleged injuries, are in Rhode Island. Moreover, Plaintiff Marisa Miniscalco's mother allegedly filled her DES prescription at a pharmacy in Rhode Island, where the pharmacy's employees likely reside.[1]

Plaintiffs attempt to justify this case remaining in the District of Columbia, where none of these witnesses reside, by asserting that they will proffer all witnesses when requested. Plaintiffs' counsel, however, cannot guarantee the cooperation of non-party witnesses over whom plaintiffs' counsel has no control.[2] None of these non-party witnesses are within the subpoena power of this Court, and it is unlikely that plaintiff Marisa Miniscalco's treating physicians and other non-family witnesses will voluntarily travel hundreds of miles to appear at trial in the District of Columbia. In contrast, all of these non-party witnesses are within the

---

[1]    Plaintiffs' recitation of the fact that the doctor who prescribed DES to Plaintiff Marisa Miniscalco's mother is now deceased does not alter the fact that every known, living non-expert witness and both Plaintiffs reside in Rhode Island. (Pls.' Opp. 1, 5.)

[2]    Plaintiffs' argument that their counsel will lend its District of Columbia office for the depositions of fact witnesses in this case is not persuasive. The fact that plaintiffs, who reside in the District of Rhode Island, selected counsel based in the District of Columbia to represent them in a case that allegedly arose in and has substantial connections to the District of Rhode Island, is not a relevant factor to be considered in determining whether to transfer this case under 28 U.S.C. Section 1404(a). Furthermore, plaintiffs' counsel do not have the power to subpoena unwilling witnesses to appear in their District of Columbia office.

146948v2

subpoena power of the District of Rhode Island and may be compelled to testify at trial. Furthermore, in addition to the potential witnesses in this case currently known to plaintiffs and Lilly, there may be independent fact witnesses currently unknown to counsel who reside in Rhode Island who are unwilling to voluntarily appear for deposition or trial and will require a subpoena. Any willingness of witnesses in prior, unrelated cases to provide testimony without a subpoena provides no prediction of the willingness of the witnesses in this case to appear for deposition or trial. Even if plaintiffs' counsel could guarantee the appearance of these individuals at trial, such a promise fails to take into account the convenience of the potential witnesses in this matter. *See Chung v. Chrysler Corp.*, 903 F. Supp. 160, 164 (D.D.C. 1995).

Plaintiffs' contention that the potential availability of deposition testimony for trial somehow negates the importance of live witness testimony does not comport with the clear preference of courts within this District. If non-party witnesses are absent from trial, the fact-finder ultimately charged with determining the merits of this case would not have the benefit of assessing the credibility of each witness. *See Pryocap Int'l Corp., v. Ford Motor Co.*, 259 F.Supp.2d 92, 98 (D.D.C. 2003) (*quoting Classen v. Brown*, No. 94-1018, 1996 WL 79490, at *6 (D.D.C. Feb. 16, 1996)) ("Live testimony is always markedly preferable to written depositions, particularly where the resolution of critical factual issues will likely turn on the credibility of the witnesses."). The court's ability to compel the appearance of unwilling non-party witnesses is an "important factor" in determining whether to transfer a case. *DeLoach v. Phillip Morris Cos.*, 132 F. Supp. 2d 22, 25 (D.D.C. 2001). Stated simply, Lilly will be prejudiced if it must defend itself against plaintiffs' claims in a district where none of the non-party fact witnesses can be compelled to testify at trial.

3

Plaintiffs' argument that Lilly must make a showing that witnesses are "actually unavailable" to testify at trial is unavailing. (Pls.' Opp. 3.) By definition, all of the known, relevant witnesses are unavailable to testify at trial in the District of Columbia because they are outside the 100 mile subpoena power of this Court. Further, the cases relied upon by plaintiffs are not persuasive. In *Thayer/Patricof Education Funding LLC v. Pryor Resources, Inc.*, 196 F.Supp.2d 21, 35 (D.D.C. 2002), unlike here, the relevant events had a "significant connection with this forum." As such, plaintiff's choice of forum was afforded "great deference." *Id.* at 31. In *FC Investment Group LC v. Lichtenstein*, 441 F.Supp.2d 3, 6, 13 (D.D.C. 2006), the District of Columbia had "meaningful ties to the controversy" because many of the events at issue took place in the District of Columbia and because the plaintiff was located in the District of Columbia.

The opinion in *Cell Genesys, Inc. v. Applied Research Systems ARS Holding N.V.*, 2005 U.S. Dist. LEXIS 10152 (D.D.C. Jan. 18, 2005), is similarly inapplicable here. This Court only *initially* denied the defendant's motion to transfer because the court was unsure whether the plaintiff was subject to the personal jurisdiction of the proposed transferee forum. *Id.* at *4. Here, there are no personal jurisdiction issues. In addition, while neither party in *Cell Genesys* was a resident of the District of Columbia, this Court gave deference to the plaintiff's choice of forum because this choice was supported by relevant statutory authority. *Id.* at *10. The statute in question, 35 U.S.C. Section 146 ("Civil action in case of interference"), is not at issue in this case.

The *Cell Genesys* Court also *initially* determined that the defendant did not meet its burden of showing that the District of Massachusetts would have been more convenient for the witnesses given that live testimony might not have been necessary due to the quasi *de novo*

review required under 35 U.S.C. Section 146 which, again, is not at issue here. *Id*. at \*13. It is interesting to note that plaintiffs failed to mention that this Court *did* eventually transfer *Cell Genesys* to Massachusetts, making no mention of any required showing of witness unavailability. *See Cell Genesys, Inc. v. Applied Research Sys. ARS Holding N.V.*, No. 04-1407, 2005 WL 3273429 (D.D.C. Nov. 14, 2005) (Bates, J.), **Attachment A** to Affidavit of John Chadwick Coots in Support of Def.'s Reply, attached as **Exhibit 1**.

Moreover, in both *Thayer* and *Cell Genesys*, the party moving for transfer had to meet a higher burden of showing the necessity of transfer due to the fact that the cases had substantial factual or statutory connections to the District of Columbia. Thus, any showing that witnesses would be unwilling to travel to the District of Columbia discussed in those cases was intended as a balancing factor to overcome the deference accorded to plaintiffs' choice of forum. Here, plaintiffs are not entitled to such deference because they do not reside in this forum and there is no factual nexus between this case and the District of Columbia. (*See* Def.'s Mem. of P. & A. 7-9.) Indeed, "the presumption may switch to [Lilly's] favor [because] neither party resides in the chosen forum and the cause of action arises elsewhere." *Abbott Labs. v. United States Fidelity & Guaranty Co.*, No. 88-2232, 1989 WL 5557, at \*2 (D.D.C. Jan. 10, 1989).

Judge Bates, who authored the *Thayer* and *Cell Genesys* opinions, and Judge Collyer, who authored the *FC Inv. Group* opinion, have both subsequently authored opinions granting Lilly's motions to transfer other DES cases without requiring any showing of the unavailability of the witnesses. *See Lagor v. Eli Lilly and Company*, No. 06-CV-1967 (D.D.C. June 18, 2007) (Bates, J.) (**Attachment B** to Exhibit 1); *McKelvey v. Eli Lilly and Company*, No. 06-CV-1820 (D.D.C. April 12, 2007) (Collyer, J.) (Attachment D to Exhibit 3 of Def.'s Mem. of P. & A.).

Finally, it is worth noting that plaintiffs' counsel has previously filed motions to transfer DES cases that, like the instant case, had no connection to the District of Columbia. In these motions to transfer, however, plaintiffs' counsel made no showing of the unavailability of witnesses and made no reference to *Thayer*, *FC Inv. Group,* or *Cell Genesys*. *See* Plaintiff's Motion to Transfer to the Eastern District of New York, filed Aug. 8, 2007 in *Pavlicas v. Eli Lilly and Company,* No. 07-1318 (D.D.C.), **Attachment C** to Exhibit 1; Plaintiffs' Motion to Transfer to the Eastern District of New York, filed Oct. 30, 2007 in *Bausch v. Eli Lilly and Company,* No. 07-1362 (D.D.C.), **Attachment D** to Exhibit 1; Partial Consent Motion to Transfer to the Eastern District of New York, filed Jan. 8, 2008 in *Dumont v. Eli Lilly and Company,* No. 07-1635 (D.D.C.), **Attachment E** to Exhibit 1. These previous filings by plaintiffs' counsel demonstrate plaintiffs' counsel's recognition of the fact that any showing of witness unavailability is not required by this Court in cases, like this one, where the plaintiff does not reside in the District of Columbia and where the case has no factual connection to the District of Columbia.

Both of the plaintiffs and all of the non-expert witnesses in this case reside within the District of Rhode Island, which is the most convenient forum for the parties and witnesses. Plaintiffs' Opposition has not shown otherwise.

## II.    THE LOCATION OF PLAINTIFFS' EXPERT WITNESSES DOES NOT WARRANT DENIAL OF LILLY'S MOTION

Plaintiffs seek to divert this Court's attention from the relevant factors by listing the locations of their paid expert witnesses. Plaintiffs state that the expert witnesses expected to testify in this case reside in states scattered around the country, including Maryland, Pennsylvania, Kansas, Florida, and New Jersey. (Pls.' Opp. at 7-8.) Plaintiffs argue that Rhode Island would not prove more convenient for these expert witness, and therefore that this Court

146948v2

should deny transfer.  This argument, however, is unavailing.  This Court has previously held that the convenience of expert witnesses is not a significant factor in this Court's decision whether to transfer this case under 28 U.S.C. Section 1404(a).  *See Froessl v. Expervision*, No. 93-2126, 1994 WL 149855, at \*4 (D.D.C. 1994) (holding that "although the convenience of experts is not irrelevant, the Defendant properly points out that their convenience is entitled to little consideration") (citation omitted); *see also Lentz v. Eli Lilly and Co.*, No. 06-1374, at 3 (D.D.C. Dec. 18, 2006) (Huvelle, J.) (discounting plaintiff's argument regarding the convenience of expert witnesses and recognizing that expert witnesses "by virtue of their role as paid experts must be prepared to travel to testify and are compensated for doing so") (Attach. A to Ex. 3 of Def.'s Mem. of P. & A.).  As already shown, Rhode Island is much more convenient for the parties and non-expert witnesses.  The convenience of these witnesses should not be given less weight than the convenience of paid expert witnesses.  Therefore, this Court should not deny transfer based on plaintiffs' argument regarding the location of their experts.

## III.  LILLY'S DE MINIMUS CONTACTS WITH THE DISTRICT OF COLUMBIA DO NOT DETRACT FROM THE GREAT WEIGHT OF THE EVIDENCE SUPPORTING LILLY'S MOTION TO TRANSFER

This case should not remain in the District of Columbia because of Lilly's activities as a company.  Lilly is headquartered and maintains its principal place of business in Indiana.  Nothing about these facts makes the District of Columbia, which has no connection to this case, a more convenient forum than the District of Rhode Island, which has substantial connections this case.  Likewise, the fact that Lilly may sell products in the District of Columbia does not make the District of Columbia a more convenient forum than the District of Rhode Island for a case involving the claims of a Rhode Island resident who was allegedly exposed to DES in Rhode Island.

146948v2

Additionally, plaintiffs' argument that Lilly's and other manufacturers' interaction with the FDA provides a connection to the District of Columbia has been flatly rejected by courts in the District of Columbia. *See In re AT&T Access Charge Litig.,* No. 05-1360, 2005 WL 3274561, *3 (D.D.C. Nov. 16, 2005) (Huvelle, J.) (holding that to accept governmental contacts in D.C. as a basis for venue "would amount to an open invitation to litigants to sue private parties in this jurisdiction whenever the case has some relationship to an agency action."); *see also DeLoach*, 132 F. Supp. 2d at 25; *Cameron v. Thornburgh,* 983 F.2d 253, 256 (D.C. Cir. 1993). Indeed, this Court has specifically rejected the argument that FDA regulatory action regarding DES established a connection between DES lawsuits and the District of Columbia. *See Thompson v. Eli Lilly and Co.*, No. 03-CV-00122, at 5 (D.D.C. June 27, 2003) (Walton, J.) (Attach. B to Ex. 3 of Def.'s Mem. of P. & A.); *Abramson v. Eli Lilly and Co.*, No. 03-CV-2541, at 4 n.6 (D.D.C. Oct. 25, 2004) (Bates, J.) (Attach. C to Ex. 3 of Def.'s Mem. of P. & A.).

Plaintiffs' argument that the District of Columbia is a proper forum for this litigation because Lilly filed a suit against its insurers in the District of Columbia is equally unpersuasive. In both *Abramson* and *Thompson*, this Court rejected Lilly's previous filing of a lawsuit in the District of Columbia as determinative of a motion to transfer. *See Thompson*, at 5 (Attach. B to Ex. 3 of Def.'s Mem. of P. & A.); *Abramson*, at 2-3 (Attach. C to Ex. 3 of Def.'s Mem. of P. & A.). As Judge Bates noted in *Abramson*, Lilly's choice of forum in its litigation against insurers regarding coverage for DES claims was based in part on the need to accommodate travelers from around the globe. *See Abramson*, at 3 n.4 (Attach. C to Ex. 3 of Def.'s Mem. of P. & A.). This is not an issue for plaintiffs in the present case because they reside within the District of Rhode Island, as do all of the other non-expert witnesses in this case,

including the physicians who allegedly diagnosed and treated plaintiff Marisa Miniscalco's alleged injuries. Further, the fact that the District of Columbia was a convenient forum for that litigation does not determine that the District is appropriate for this case.

This Court has repeatedly held that regardless of any alleged contacts between Lilly and the District of Columbia, where the plaintiffs and non-expert witnesses in a DES case all reside within another jurisdiction, transfer from the District of Columbia to that jurisdiction is appropriate. *See, e.g.*, *Thompson* (Attach. B to Ex. 3 of Def.'s Mem. of P. & A.); *Abramson* (Attach. C to Ex. 3 of Def.'s Mem. of P. & A.); *Lentz* (Attach. A to Ex. 3 of Def.'s Mem. of P. & A.).[3] Plaintiffs' reliance on *Robinson v. Eli Lilly and Co.*, No. 07-CV-153 (D.D.C. Feb. 26, 2008) (Roberts, J.) (App. 6 to Pls.' Opp.), to argue against transfer is misplaced. In *Robinson*, unlike here, where both of the plaintiffs and all of the non-expert witnesses live within the proposed transferee district, the *Robinson* plaintiffs and non-expert witnesses lived in two different states. *Id.* at 2-3. Thus, *Robinson* is clearly distinguishable from the present case and the numerous other opinions of this Court which granted motions to transfer.

## IV.   PLAINTIFFS' REMAINING ARGUMENTS ARE UNPERSUASIVE

### A.   Availability of Magistrate Judge Kay

Plaintiffs' argument that the "availability of Judge Kay has been held as a factor against transfer," has been expressly rejected by this Court. (Pls.' Opp. at 10.) This Court has held that Magistrate Kay's experience mediating DES cases is an insufficient ground to maintain a case in the District of Columbia that should otherwise be transferred. *See Abramson*, pp. 4-5

---

[3]     Nor did any of these opinions weigh the fact that Lilly sold products within the District of Columbia more heavily than the fact that all of the relevant parties and non-expert witnesses resided in another jurisdiction. As such, Plaintiffs' reliance on *Stevens v. General Motors Corp.*, No. 06-CV-255, 2006 U.S. Dist. LEXIS 84958 (E.D. Tex. Nov. 21, 2006), an unpublished opinion from the Eastern District of Texas to argue otherwise should not affect this Court's determination that transfer is appropriate, a determination that is strongly supported by precedent within *this* jurisdiction. (*See* Pls.' Opp. 8-9.)

(Attach. C to Ex. 3 of Def.'s Mem. of P. & A.); *Thompson*, p.4 n.4 (Attach. B to Ex. 3 of Def.'s Mem. of P. & A.).  The fact that past DES cases have occurred in the District of Columbia does not mean that this case – that has absolutely no connection to the District of Columbia – belongs here.

      B.  <u>Choice of Law Analysis</u>

      Plaintiffs' argument that transfer should be denied because "a District of Columbia court is in the best position to interpret the District of Columbia statute of limitations" ignores the District of Columbia's established choice of law analysis.  (Pls.' Opp. at 10.)  The four factors considered under the choice of law analysis are: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered.  *Herbert v. District of Columbia*, 808 A.2d 776, 779 (D.C. 2002); R<span style="font-variant:small-caps">ESTATEMENT</span> (S<span style="font-variant:small-caps">ECOND</span>) O<span style="font-variant:small-caps">F</span> C<span style="font-variant:small-caps">ONFLICT</span> O<span style="font-variant:small-caps">F</span> L<span style="font-variant:small-caps">AWS</span> § 145 (1971).

      The majority of these factors clearly point to Rhode Island law, while not a single factor favors application of District of Columbia law.  Accordingly, because the substantive body of law that will determine the issues in this case will be derived from Rhode Island law, the public interest factor of holding the trial in a court whose state's law will govern the case strongly supports the granting of Lilly's motion to transfer this case to Rhode Island.  Plaintiffs' suggestion that the case should not be transferred because a District of Columbia court is in a better position to interpret the District of Columbia statute of limitations is unpersuasive when compared to the much larger issues that will be determined by the substantive law of Rhode Island.

146948v2

C. <u>Congestion of the Courts</u>

Plaintiffs' complain that Lilly did not submit proof of the relative congestion of the courts. (Pls.' Opp. at 2.) As discussed in Lilly's Memorandum of Points and Authorities in support of its transfer motion, Judge Walton noted that the District of Columbia's court calendar is "quite congested." *Thompson,* p. 4 n.4 (Attachment B to Exhibit 3, of Def.'s Mem. of P. & A.). Data available from the Administrative Office of the United States Courts for the twelve month period ending March 31, 2007 demonstrates that the District of Columbia court docket is far more congested than the District of Rhode Island docket. *See* Federal Judicial Caseload Statistics March 31, 2007, Table C-5, Administrative Office of the United States Courts, **Attachment F** to Exhibit 1. While there were over 2,000 cases filed in the District of Columbia, there were only 528 cases filed in Rhode Island during the same period. *Id.* Moreover, cases in Rhode Island are tried nearly twice as quickly as cases tried in the District of Columbia. *Id.* Therefore, transferring this case to Rhode Island will both help control docket congestion and possibly result in a quicker resolution of this case.

## **<u>CONCLUSION</u>**

This case has substantial connections to the District of Rhode Island and no connection whatsoever to the District of Columbia. Lilly respectfully requests that the Court transfer this action to the United States District Court for the District of Rhode Island pursuant to 28 U.S.C. Section 1404(a) "[f]or the convenience of parties and witnesses, in the interest of justice."

11

Respectfully submitted,

SHOOK, HARDY & BACON, L.L.P

  /s/ John Chadwick Coots
Michelle R. Mangrum, D.C. Bar No. 473634
John Chadwick Coots, D.C. Bar No. 461979
600 14TH Street, N.W., Suite 800
Washington, DC  20005-2004
Phone: (202) 783-8400
Fax: (202) 783-4211

and

David W. Brooks
SHOOK, HARDY & BACON, LLP
2555 Grand Boulevard
Kansas City, MO 64108
Phone:  (816) 474-6550
Fax:  (816) 421-5547

**ATTORNEYS FOR DEFENDANT
ELI LILLY AND COMPANY**


## CERTIFICATE OF SERVICE

         I, the undersigned, hereby certify that a true and accurate copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, this 4th day of April, 2008, which sent notification of such filing to all counsel of record listed below.

Aaron M. Levine                          Sidney G. Leech
Aaron M. Levine & Associates             Goodell, DeVries, Leech & Dann, LLP
1320 19th St., N.W., Suite 500           One South Street, 20th Floor
Washington, DC 20036                     Baltimore, MD  21202

**Attorneys for Plaintiffs**                **Attorneys for Bristol Myers Squibb Company**


  /s/ John Chadwick Coots
**ATTORNEY FOR DEFENDANT
ELI LILLY AND COMPANY**

146948v2

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MARISA MINISCALCO and ANTHONY MINISCALCO | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) |
| ELI LILLY AND COMPANY, et al., | ) ) ) |
| Defendants. | ) ) |

**CIVIL ACTION NO. 1:07-cv-1198 (JDB/AK)**

**AFFIDAVIT OF JOHN CHADWICK COOTS IN SUPPORT OF
DEFENDANT ELI LILLY AND COMPANY'S
<u>REPLY IN SUPPORT OF ITS MOTION TO TRANSFER</u>**

I, John Chadwick Coots, being first sworn on oath, say that the following is true and correct:

1.    I am an attorney in the firm of Shook, Hardy & Bacon, LLP, counsel for defendant Eli Lilly and Company ("Lilly") in the above-captioned action.

2.    Attachment A is a true copy of this Court's decision in *Cell Genesys, Inc. v. Applied Research Sys. ARS Holding N.V.*, No. 04-1407, 2005 WL 3273429 (D.D.C. Nov. 14, 2005) (Bates, J.).

3.    Attachment B is a true copy of this Court's decision in *Lagor v. Eli Lilly and Company*, No. 06-CV-1967 (D.D.C. June 18, 2007) (Bates, J.).

4.    Attachment C is a true copy of plaintiffs' counsel's Motion to Transfer to the Eastern District of New York, filed Aug. 8, 2007 in *Pavlicas v. Eli Lilly and Company,* Civil Action No. 07-1318 (D.D.C.).

1

146956v1

5.     Attachment D is a true copy of plaintiffs' counsel's Motion to Transfer to the Eastern District of New York, filed Oct. 30, 2007 in *Bausch v. Eli Lilly and Company,* No. 07-1362 (D.D.C.).

6.     Attachment E is a true copy of plaintiffs' counsel's Partial Consent Motion to Transfer to the Eastern District of New York, filed Jan. 8, 2008 in *Dumont v. Eli Lilly and Company,* No. 07-1635 (D.D.C.).

7.     Attachment F is a true copy of Federal Judicial Caseload Statistics March 31, 2007, Table C-5, Administrative Office of the United States Courts.

Executed on April 4, 2008

John Chadwick Coots

2

DISTRICT OF )

COLUMBIA )ss.

)

On this 4th day of April, 2008, before me, a notary public in and for said jurisdiction, personally appeared John Chadwick Coots, to me personally known, who being duly sworn, acknowledged that he had executed the foregoing instrument for purposes therein mentioned and set forth.

_____

NOTARY PUBLIC

My Commission Expires:

ALAN ROBERT STARNER
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires January 14, 2013

3

**Attachment A**



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3273429 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d)

**C**
Cell Genesys, Inc. v. Applied Research Systems
ARS Holding, N.V.
D.D.C.,2005.
Only the Westlaw citation is currently available.
United States District Court, District of Columbia.
CELL GENESYS, INC., Plaintiff,
v.
APPLIED RESEARCH SYSTEMS ARS HOLD-
ING, N.V., Defendant.
**No. Civ.A. 04-1407 JDB.**

Nov. 14, 2005.

Steven B. Kelber, Merchant & Gould, Washington,
DC, for plaintiff.
Bradford P. Lyerla, Cullen N. Pendleton, Marshall,
Gerstein & Borun LLP, Chicago, IL, Frank J. West,
Oblon, Spivak, McClell and, Maier & Neustadt, Al-
exandria, VA, Kevin M. Flowers, Marshall, Ger-
stein & Borun LLP, Chicago, IL, Matthew C.
Nielsen, Michael F. Borun, Sandip H. Patel, Willi-
am K. Merkel, Marshall, Gerstein & Borun LLP,
Chicago, IL, Charles L. Gholz, Oblon, Spivak, Mc-
Clelland, Maier & Neustadt, P.C., Alexandria, VA,
for defendant.

*MEMORANDUM OPINION*

BATES, J.
*1 On January 18, 2005, this Court issued a deci-
sion denying the motion of defendant Applied Re-
search Systems ARS Holding, N.V. ("ARS") to
transfer this action to the United States District
Court for the District of Massachusetts, where a
parallel patent interference action brought by ARS
is pending. The Court assessed the various public
and private factors relevant to transfer pursuant to
28 U.S.C. § 1404(a), and concluded that although
the issue was close, a sufficiently strong case for
transfer was not presented. However, the Court
noted that "judicial economy remains a very im-
portant consideration," that "duplicative parallel
proceedings in the two courts should be avoided if

at all possible," and that accordingly
"considerations of judicial economy constitute the
governing factor relating to transfer under the cir-
cumstances of this case."Mem. Op. (Jan. 18, 2005)
at 11-13.

At that time, it was uncertain whether the Dis-
trict of Massachusetts action would proceed there in
light of a personal jurisdiction issue with respect to
Cell Genesys, Inc. ("CGI"), the plaintiff in this
Court and the defendant in the Massachusetts ac-
tion. The issue was pending before Judge Wolf in
the District of Massachusetts. This Court noted that
"if Judge Wolf were to decide that there is personal
jurisdiction over CGI in the District of Massachu-
setts, no apparent impediment to transfer of this
case to the District of Massachusetts re-
mains."Mem. Op. (Jan. 18, 2005) at 12.

Judge Wolf has now denied CGI's motion to
dismiss, finding that CGI is subject to general per-
sonal jurisdiction in Massachusetts based on the
number and significance of CGI's business relation-
ships with Massachusetts companies as well as re-
search and clinical trial relationships with Mas-
sachusetts entities. *See* ARS Supp'l Brief in Support
of Transfer, Ex. B (Tr. of Oct. 18, 2005 Motion
Hearing) at 50-57 ("Ex.B"). Judge Wolf concluded
that the collective contacts with Massachusetts in
eight distinct ways were "regular, continuous, and
systematic," and hence sufficient to establish per-
sonal jurisdiction. *Id.* at 54.

On October 20, 2005, Judge Wolf stayed ARS's
action against CGI in the District of Massachusetts
to enable this Court to reexamine the transfer issue.
ARS Supp'l Brief in Support of Transfer, Ex. C
(Order dated Oct. 20, 2005) at 1-2; *see* Ex. B at 59.
He also made several observations at the motion
hearing to assist the transfer analysis. He observed
that he does "not object to the transfer of the Dis-
trict of Columbia interference case to Massachu-
setts,"[FN1] that this Court should not assume that he
has greater expertise in interference issues, and that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3273429 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d)

"[i]t may be most efficient to have one judge handle all of the issues relating to the patent if one judge has jurisdiction over all the parties. Judge Bates, as I understand it, does not have and cannot get jurisdiction over TKT." Ex. B at 59-60.[FN2] He went on to state that if this case were transferred there, "it would be my intention to maintain Judge Bates' schedule.... [A] transfer should not entail any delay or any material delay." *Id.* at 60.

> FN1. Judge Wolf noted that there was some risk that, based on further evidence, he could later conclude that there was no personal jurisdiction in Massachusetts, in which event the case would have to be transferred back here. *See* Ex. B at 59.

> FN2. TransKaryotic Therapies, Inc. ("TKT") is the defendant in a pending patent infringement action brought by ARS and joined with ARS's interference action against CGI in the District of Massachusetts. There is no dispute that this Court would not have personal jurisdiction over TKT.

**\*2** ARS has now reasserted its request for transfer of this case to the District of Massachusetts and this Court has requested and received further briefing from the parties. Several reasons lead the Court to conclude that transfer is the better course at this time. The basic framework for analysis remains as described in the Court's January 18, 2005 decision. A few factors may have changed slightly-for example, reliance on Judge Wolf's expertise may not be warranted with respect to interference issues-but the conclusion to transfer rests primarily on three considerations.

*First,* and foremost, judicial economy is still the overriding concern, and now strongly favors transfer. As both this Court and Judge Wolf have recognized, transferring this case to the District of Massachusetts will avoid duplicative proceedings requiring two judges to expend considerable time and effort to learn the scientific and patent-law is-

sues involved in these actions. The interference cases will involve the same facts, law and issues. Moreover, there will be substantial overlap in facts and issues between the interference case and the related infringement action against TKT, which can only proceed in Massachusetts. Accordingly, considerations of judicial economy, which are an overriding factor, strongly support transfer of this case to the District of Massachusetts. *See* Mem. Op. (Jan. 18, 2005) at 11-13.

CGI's assertion that concerns over judicial economy have been satisfied is not convincing. Although Judge Wolf has indicated that he will stay the Massachusetts interference case if this case is not transferred, retaining the interference action here would likely mean that, in addition to this Court's efforts, Judge Wolf would also have to become fully versed in the legal, scientific and factual background and issues in the context of the TKT infringement action, which can only be litigated in Massachusetts, not here. That would be an inefficient result.

*Second,* Massachusetts plainly has a greater interest in this matter than does the District of Columbia. Judge Wolf's ruling that CGI is subject to general personal jurisdiction in Massachusetts confirms that CGI has had a continuous, substantial business presence in Massachusetts and that the resolution of the case will significantly affect TKT's business interests in Massachusetts. On the other hand, as this Court has previously noted, the District of Columbia has no connection whatsoever with this action.

CGI's pledge that it will again seek on summary judgment to convince Judge Wolf that it is not subject to personal jurisdiction in Massachusetts is not a reason for this Court to deny transfer. It is not at all clear that CGI can make the necessary showing on the facts that it has no substantial connections to Massachusetts, and it certainly has not yet done so.[FN3] The possibility of such an approach by CGI is not enough, and if CGI chooses that course then presumably ARS could seek jurisdictional dis-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3273429 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

covery, which to date has not been available to ARS. In any event, this Court is disinclined to deny transfer based on CGI's threat to continue its challenge to personal jurisdiction in Massachusetts and its speculation about the outcome of that threatened challenge.

> FN3. CGI has focused solely on its clinical trials in Massachusetts, but has not addressed the other CGI connections to Massachusetts noted, and relied upon, by Judge Wolf.

**\*3** *Third,* transfer will not result in any delay or prejudice to CGI. Judge Wolf has stated that he intends to maintain the current discovery schedule, and therefore that "a transfer should not entail any delay or any material delay."In fact, little discovery has actually occurred according to ARS, and any exchange of documents accomplished to date in this action can certainly be used in the District of Massachusetts in the combined interference action. Hence, the fact that this action is further along the litigation trail should not result in any delay or prejudice upon transfer, because the greater "maturity" of this case noted by CGI will go to Massachusetts with the transfer in light of Judge Wolf's observations.

Therefore, for all these reasons-especially considerations of judicial economy-and taking into account the public and private factors assessed in the Court's previous decision, ARS's motion to transfer pursuant to 28 U.S.C. § 1404(a) will be granted. This case will accordingly be transferred to the United States District Court for the District of Massachusetts. A separate order has been issued on this date.

D.D.C.,2005.
Cell Genesys, Inc. v. Applied Research Systems ARS Holding, N.V.
Not Reported in F.Supp.2d, 2005 WL 3273429 (D.D.C.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Attachment B**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

---

KATHARINE LAGOR, et al.

    Plaintiffs,

      v.

ELI LILLY AND COMPANY, et al.

    Defendants.

---

Civil Action No.  06-1967(JDB)

## ORDER

Upon consideration of [16] plaintiffs' motion to transfer this case to the U.S. District Court for the District of Massachusetts, [17] defendant Eli Lilly and Company's motion to transfer this case to the U.S. District Court for the District of Rhode Island, the oppositions and replies thereto, and the entire record herein, and for the reasons stated in the Memorandum Opinion issued on this date, it is this 18th day of June, 2007, hereby

    **ORDERED** that plaintiffs' motion to transfer is **DENIED**; and it is further

    **ORDERED** that defendant's motion to transfer is **GRANTED**, and this case is hereby **TRANSFERRED** to the U.S. District Court for the District of Rhode Island pursuant to 28 U.S.C. § 1404(a).

    **SO ORDERED**.

                /s/
                JOHN D. BATES
              United States District Judge

Dated:  June 18, 2007

-1-

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

KATHARINE LAGOR, et al.

Plaintiffs,

v.

ELI LILLY AND COMPANY, et al.

Defendants.

Civil Action No. 06-1967(JDB)

---

## MEMORANDUM OPINION

Plaintiffs Katharine Lagor and Timothy Lagor bring this products-liability action individually and on behalf of their minor daughter, Emily Grace Lagor, against defendant Eli Lilly and Company for injuries allegedly sustained as a result of Katharine Lagor's in utero exposure to diethylstilbestrol ("DES"). Both parties now move to transfer this action to a different venue pursuant to 28 U.S.C. §1404(a). Plaintiffs seek transfer to the U.S. District Court for the District of Massachusetts, while defendants seek transfer to the U.S. District Court for the District of Rhode Island. Upon consideration of the parties' submissions, and for the reasons set forth below, the Court will grant defendant's motion and deny plaintiffs' motion, and accordingly this case will be transferred to the District of Rhode Island.

## BACKGROUND

The parties agree as to the central facts relevant to the disposition of their respective motions to transfer. Plaintiffs reside in Seekonk, Massachusetts -- a town located approximately five miles from the Massachusetts-Rhode Island border. Plaintiff Katharine Lagor's mother,

-1-

Barbara Fahey, also lives in Seekonk. While pregnant with Katharine, Fahey was prescribed

DES by her physicians in Providence, Rhode Island. Fahey purchased DES at a pharmacy in

Rumford, Rhode Island and ingested the drug at her home in Seekonk. Fahey gave birth to

plaintiff Katharine Lagor in Providence, Rhode Island in 1955.[*] As a result of her embryonic

DES exposure, Katharine allegedly sustained cervical incompetency and was rendered incapable

of carrying a child to full term. Consequently, Katharine's daughter, Emily Grace Lagor, was

born prematurely and now suffers from cerebral palsy.

Like her mother, Emily Grace Lagor was born in Providence, Rhode Island. All but one

of the physicians identified as having diagnosed or treated Emily Grace and Katharine Lagor for

their alleged DES-related injures are located in Rhode Island. Emily Grace has been hospitalized

once in Boston, Massachusetts, and numerous times throughout Rhode Island. The operative

facts of this case are thus connected to both the state of Rhode Island and the state of

Massachusetts. Plaintiffs concede that this case has no connection to the District of Columbia

"beyond that the Defendants conduct or have conducted significant business there." Pls.' Mot. to

Transfer at 2.

## ANALYSIS

28 U.S.C. §1404(a) authorizes a district court to transfer any civil action to any other

district where it originally might have been brought "[f]or the convenience of parties and

---

[*] Contrary to plaintiffs' assertion that Katharine Lagor was born in Seekonk, Massachusetts, see Pls.' Mem. in Supp. of Mot. to Transfer ("Pls.' Mem.") at 1, Katharine Lagor identifies her place of birth as Providence, Rhode Island. See Def's. Exh. 2 (Katharine Lagor's Answers to Interrogatories) at 2, No. 1.

witnesses, [and] in the interest of justice." A party moving to transfer under 28 U.S.C. §1404(a)

bears the burden of establishing (1) that the plaintiff initially could have brought the action in the

proposed transferee district, and (2) that considerations of convenience and the interests of justice

weigh in favor of transfer.  See Brannen v. National R.R. Passenger Corp., 403 F. Supp. 2d 89,

92 (D.D.C. 2005); see also Trout Unlimited v. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C.

1996).  Plaintiffs do not dispute that they could have brought this suit in the District of Rhode

Island, nor do defendants dispute plaintiffs' contention that suit could have been filed in the

District of Massachusetts.  Subject-matter jurisdiction, personal jurisdiction, and venue would be

proper in both states.  Because plaintiffs and defendants have both met the threshold requirement

for transfer under §1404(a), the Court must assess whether either party has satisfied its burden of

showing that considerations of convenience and the interests of justice support transfer to the

District of Massachusetts or to the District of Rhode Island.

Section §1404(a) grants district courts broad discretion "to adjudicate motions to transfer

according to 'an individualized, case-by-case consideration of convenience and fairness.'"

Stewart Org., Inc v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376

U.S. 612, 622 (1964)).  Specifically, courts weigh a number of "private-interest" and "public-

interest" factors in order to evaluate whether transfer is warranted in a particular case.  Trout

Unlimited, 944 F. Supp. at 16.  The private-interest considerations include: (1) the plaintiff's

choice of forum; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4)

the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that

the witnesses may be unavailable for trial in one of the fora; and (6) the ease of access to the

sources of proof.  Id. (citations omitted).  The public-interest considerations include: (1) the

-3-

transferee court's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in adjudicating local controversies at home. Id.

## A. Private-Interest Factors

Here, the private-interest factors weigh in favor of transfer to the District of Rhode Island. With respect to the first private interest factor -- the plaintiff's choice of forum -- courts have recognized that the deference generally given to a plaintiff's choice of forum is reduced when the chosen forum is not the plaintiff's home forum, see Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981); Boers v. United States, 133 F. Supp. 2d 64, 65 (D.D.C. 2001), or when the chosen forum has "no factual nexus with the lawsuit," Schmid Labs., Inc. v. Hartford Acc. & Indem. Co., 654 F. Supp. 734, 737 (D.D.C. 1986). The showing a defendant must make to justify transfer is further diminished where transfer is sought to a "forum with which plaintiffs have substantial ties and . . . the subject matter of the lawsuit is connected." Trout Unlimited, 944 F. Supp. at 17. Thus, in a DES case similar to this one, another judge in this district granted the defendant's motion to transfer from the District of Columbia both because the case was substantially connected to the transferee forum and because the District of Columbia had "no such connection" to the case. Thompson v. Eli Lilly and Co., Civ. A. No. 03-122, slip. op. at 5 (D.D.C. June 27, 2003). Just like in Thompson, the only link between the present case and the District of Columbia is that Eli Lilly has conducted significant business in the District. Plaintiffs Katharine and Emily Grace Lagor were born in Rhode Island, all but one of plaintiffs' physicians are located in Rhode Island, and Barbara Fahey purchased and was prescribed DES in Rhode Island. Because the District of Columbia was not plaintiffs' home forum to begin with -- nor the

-4-

situs of any of the facts giving rise to this specific cause of action -- plaintiffs' initial choice of forum merits little deference.

Several district courts have also recently held that where a plaintiff herself seeks transfer, the plaintiff's "second or third choices of forum receive[] no deference." Health Discovery Corp. v. Ciphergen Biosystems, Inc., Civ. A. No. 06-260, 2007 WL 128283, at *3 (E.D. Tex. Jan. 11, 2007) (emphasis added); see also Tiffany v. Hometown Buffet, Inc., Civ. A. No. 06-2524, 2006 WL 2792868, at *2 (N.D. Cal. Sept. 28, 2006). Although the record does not disclose plaintiffs' motivations for initially filing suit in the District of Columbia and then requesting transfer to the District of Massachusetts four months later (rather than bringing suit in Massachusetts originally), the Supreme Court has warned against allowing parties to use motions to transfer as veiled means of forum shopping. See Van Dusen, 376 U.S. at 636 (stating that §1404(a) was intended as a "judicial housekeeping measure" rather than a "forum-shopping instrument"); see also Schmid Labs, 654 F. Supp. at 737 (stating that "the transfer provisions in the U.S. Code . . . were in part intended to prevent forum shopping"); Tiffany, 2006 WL 2792868, at *2 (denying plaintiffs' motion to transfer where filing suit in one jurisdiction and then moving to transfer was indicative of forum shopping). Regardless of whether, as defendants urge, plaintiffs' decision to sue in this district constituted a strategic attempt to avail themselves of the District of Columbia's "advantageous statute of limitations," see Def.'s Mem. in Supp. of Mot. to Transfer ("Def.'s Mem.") at 5, or reflected more practical concerns (such as the presence of plaintiffs' counsel here), this Court accords no weight to plaintiffs' second-choice forum.

The remaining private-interest factors likewise favor transferring the present action to the District of Rhode Island. First, there is a substantial nexus between defendants' forum choice and

the facts of this case. As another member of this Court recently explained in Dean v. Eli Lilly &

Co., Civ. A. No. 06-1375, 2007 WL 1589496, at *2 (D.D.C. June 1, 2007), "the issues of

whether the plaintiffs were exposed to Eli Lilly's product, the extent of the plaintiffs' injuries, and

causation all center around Eli Lilly's sale of DES" -- a sale that, in this case, occurred in Rhode

Island.

   The third private-interest factor the Court considers -- where the claim arose -- also leans

in favor of transfer to Rhode Island. Not only was the DES prescribed to Fahey in Rhode Island,

but she also purchased the drug and gave birth to her daughter Katharine there as well. Both

Katharine and Emily Grace Lagor received diagnoses and treatment for their alleged DES-related

injuries almost exclusively in Rhode Island. Although plaintiffs claim that Fahey's ingestion of

DES in Massachusetts serves to make Massachusetts the place of the plaintiffs' injuries, see Pls.'

Mem. at 6, and thus the site where their claims arose, plaintiffs have failed to cite any case where

the mere fact of DES ingestion in a state warranted transfer to that state. Rather, in all of the

cases cited by plaintiffs, the site of ingestion was also the site of the DES prescription, purchase,

and usually, the birth of the afflicted child. See Thompson, Civ. A. No. 03-122, slip op. at 2

(finding site where DES was prescribed, purchased, and ingested to be location giving rise to

plaintiffs' claims); see also Dean, 2007 WL 1589496, at *3 (plaintiffs' claims arose in

Massachusetts because the alleged prescription, purchase, and exposure to DES occurred in that

state); Clayton v. Eli Lilly & Co., 421 F. Supp. 2d 77, 80 (D.D.C. 2006) (operative events

regarding DES claim include not only site of DES ingestion and in utero exposure, but also place

where DES prescription was filled). Moreover, even though Massachusetts was the technical site

of plaintiff Katharine Lagor's injuries, Rhode Island remains the place of plaintiff Emily Grace

Lagor's injuries, since they occurred not during in utero DES exposure in Massachusetts, but from a premature birth in Rhode Island. Thus, the clear majority of the material events that constitute the factual basis of plaintiffs' claims occurred in Rhode Island.

While plaintiffs argue that the fourth private-interest factor -- the convenience of the parties -- warrants transfer to Massachusetts, the Court does not find this factor dispositive. By initially filing suit in the District of Columbia, plaintiffs made clear their willingness "to forego the convenience of a geographically nearby forum." Dean, 2007 WL 1589496, at *3. In addition, defendants correctly point out that plaintiffs' hometown of Seekonk, Massachusetts is actually fifty miles closer to the federal courthouse in Providence, Rhode Island than to their requested federal courthouse in Boston, Massachusetts. See Def.'s Mem. at 8. The Court further notes that the parties' desired forums are in relatively close proximity, thereby minimizing any inconvenience to plaintiffs that could result from a transfer to Rhode Island as opposed to a transfer to Massachusetts. Although both parties are represented by counsel in the District of Columbia, the location of counsel "bears little, if any, weight in a court's determination of whether to transfer under §1404(a)." Dean, 2007 WL 1589496, at *3 n.1 (citing McClamrock v. Eli Lilly & Co., 267 F. Supp. 2d 33, 40 (D.D.C. 2003)).

Not only will transfer to Rhode Island result in minimal, if any, inconvenience to the parties, but "the most critical factor to examine under 28 U.S.C. §1404(a) is the convenience of the witnesses," not the convenience of the parties. Chung v. Chrysler Corp., 903 F. Supp. 160, 164 (D.D.C. 1996); see also Abramson v. Eli Lilly & Co., Civ. A. No. 03-2541, slip. op. at 3 (D.D.C. 2004). An examination of the potential witnesses in this case demonstrates that the lawsuit best belongs in the District of Rhode Island. The central issues relevant in a DES

-7-

products liability/personal injury action are "questions of exposure, product identification, and the nature and extent of [the plaintiffs'] alleged injuries." Thompson, Civ. A. No. 03-122, slip op. at 4 n.1. Aside from deposing the plaintiffs, the resolution of these issues will involve deposing Barbara Fahey, Fahey's prescribing physicians and pharmacists, as well as the physicians who have diagnosed and treated plaintiffs Katharine and Emily Grace Lagor for their alleged DES-related injuries. As plaintiffs admitted in their interrogatory responses, both of Fahey's prescribing physicians, all of Katharine Lagor's named physicians, and all but one of Emily Grace Lagor's physicians are located in Rhode Island. See Def.'s Exh. 2 at 3-7, Nos. 7, 9, 10, 11, 17; Def.'s Exh. 3 (Emily Grace Lagor's Answers to Interrogatories) at 2-3, No. 5. The pharmacy where Fahey filled her DES prescription is also located in Rhode Island. See Def.'s Exh. 2 at 8-9, No. 20. By contrast, there are no essential non-party witnesses in the District of Columbia, and only two potential non-party witnesses in Massachusetts (one of Emily Grace Lagor's seven identified physicians and Fahey herself). Although all of the potential witnesses are within the subpoena power of both Massachusetts and Rhode Island, the vast majority are located in Rhode Island, and consequently, transfer to Rhode Island will be the most convenient for the greatest number of potential witnesses. Finally, transfer to Rhode Island will best facilitate access to sources of proof, given that almost all of the relevant medical and pharmaceutical records are located there.

**B. Public-Interest Factors**

In addition to the private-interest factors weighing in favor of transfer, the relevant public-interest factors also suggest that this case should be transferred to Rhode Island. The first such factor that this Court considers is the proposed transferee district's familiarity with the

-8-

governing law. Courts agree that the public interest is "best served by having a case decided by the federal court in the state whose laws govern the interests at stake." Trout Unlimited, 944 F. Supp. at 19; see also Schmid Labs, 654 F. Supp. at 737 n.11. Although the issue has not yet been resolved, Rhode Island substantive law will most likely govern this case. Under the District of Columbia choice of law analysis for tort actions, a court must consider four factors to determine which state's substantive law will apply: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship between the parties, if any, is centered. See Herbert v. District of Columbia, 808 A.2d 776, 779 (D.C. 2002) (citing Restatement (Second) of Conflict of Laws §145 cmt. d (1971)). The Court evaluates these factors for the ultimate purpose of determining which jurisdiction has the most significant relationship to the dispute. See Jaffe v. Palotta Teamworks, 374 F.3d 1223, 1227 (D.C. Cir. 2004); see also Clayton, 421 F. Supp. at 80; Bortell v. Eli Lilly & Co., 406 F. Supp. 2d 1, 5 (D.D.C. 2005).

In this case, Rhode Island has the most significant relationship to the parties' dispute. Although plaintiffs reside in Massachusetts and Katharine Lagor's injuries technically "occurred" in Massachusetts (since the place of injury in DES cases is the location of in utero DES exposure, see, e.g., Dean, 2007 WL 1589496, at *4; Bortell, 406 F. Supp. 2d at 5), Emily Grace Lagor's alleged injuries occurred in Rhode Island. Concretely, Emily Grace Lagor was harmed not when her grandmother ingested DES in Massachusetts in 1954-55, but instead, when she was born prematurely in Rhode Island in 1990. Rhode Island is also the place where most of the conduct causing both of the plaintiffs' injuries occurred -- and where the relationship between the parties

-9-

is centered. Barbara Fahey was prescribed DES by a doctor in Rhode Island and she purchased

DES from a pharmacy in Rhode Island. The mere fortuity that ingestion of the drug, the "last act

necessary to cause plaintiff's injuries," Bortell, 406 F. Supp. at 5, occurred in Massachusetts does

not negate the fact that most of the operative events giving rise to the plaintiffs' injuries

transpired in Rhode Island. See Clayton, 421 F. Supp at 80 (stating that place where DES

prescription was filled is a relevant factor in assessing where conduct causing plaintiffs' injuries

occurred); Bortell, 406 F. Supp. at 5 (examining not only place where DES was ingested, but also

place where DES was prescribed and dispensed to determine where conduct causing plaintiffs'

injuries occurred).

Also favoring Rhode Island as a venue is the principle that a plaintiff's residence and

place of injury -- although both relevant in choice-of-law analyses -- are by no means dispositive

where most of the conduct leading to the injury occurred elsewhere. See Long v. Sears Roebuck

& Co., 877 F. Supp. 8 (D.D.C. 1995). The court in Long found that District of Columbia law

applied to a products liability action stemming from an accident involving a Maryland resident

that had occurred in Maryland, since the conduct leading to the injury (that is, "the sale of the

allegedly defective product") occurred in the District of Columbia, the "seller-purchaser

relationship" between the parties was centered in the District of Columbia, and the defendants'

"alleged misrepresentation" as to the safety of their product occurred in the District of Columbia.

Id. at 12. Just as in Long, the conduct causing plaintiffs' injuries in this case -- the prescription

and sale of the DES -- occurred in Rhode Island, the seller-purchaser relationship between the

parties was consummated at a pharmacy in Rhode Island, and any alleged misrepresentation

made by Eli Lilly to the plaintiffs' physicians and pharmacists also occurred in Rhode Island

-10-

(where they were located). Hence, while Massachusetts certainly has an interest in the present

litigation because it is the site of plaintiff Katharine Lagor's injuries and plaintiffs' place of

residence, Rhode Island has a more significant interest in plaintiffs' claims and, consequently, its

substantive law will probably apply to this case. Because a Rhode Island court is best qualified

to apply its own law, plaintiffs' claims should be heard in Rhode Island.

The second public-interest factor -- the relative docket congestion in the transferor and

transferee forums -- also points towards transfer to Rhode Island. As this Court explained in

Abramson, Civ. A. No. 03-2541, slip op. at 4-5, "given the very minimal connection of this

lawsuit to the District of Columbia, it does not seem appropriate to burden this jurisdiction and

its limited resources . . . with this case." Not only is Rhode Island's court calendar less congested

than the court calendar of the District of Columbia, but it is also less congested than the court

calendar of Massachusetts. See James C. Duff, 2006 Annual Report of the Director of the United

States Courts, App. C5 & C10, http://www.uscourts.gov/judbus2006/appendices/c5.pdf;

http://www.uscourts.gov/judbus2006/appendices/c10.pdf. Moreover, since discovery in this case

has just begun -- and the Court has not yet familiarized itself with the underlying merits of the

plaintiffs' claims -- there would be relatively little delay associated with transfer to Rhode Island.

Finally, transfer to Rhode Island will support the compelling public interest in having

controversies resolved in the locale where they arise. Although Massachusetts undoubtedly has

an interest in adjudicating the personal injury claims of its own citizens, see, e.g., Dean, 2007

WL 1589496, at *5; Lentz v. Eli Lilly and Co., 464 F. Supp. 2d 35, 38 (D.D.C. 2006), Rhode

Island has an even greater interest in adjudicating DES cases in which the alleged prescription of

DES, sale of DES, and birth of the afflicted individuals all occurred within its borders.

-11-

## CONCLUSION

For the foregoing reasons, defendants' motion to transfer this case to the U.S. District

Court for the District of Rhode Island pursuant to 28 U.S.C. §1404(a) is granted, and plaintiffs'

motion to transfer this case to the U.S. District Court for the District of Massachusetts is denied.

A separate order has been posted on this date.

_____/s/_____
JOHN D. BATES
United States District Judge

Dated:   June 18, 2007

# Attachment C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
CONNIE FRANCO PAVLICAS,          )
                                 )
          Plaintiff,             )
                                 )
     v.                          )    Civil Action No.: 07-1318 (HHK)
                                 )    Next Event:
ELI LILLY AND COMPANY, et al.,   )
                                 )
          Defendants.            )
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
```

### PLAINTIFF'S MOTION TO TRANSFER TO
### THE EASTERN DISTRICT OF NEW YORK

COMES NOW Plaintiff Connie Franco Pavlicas, through counsel, and moves under 28 U.S.C. § 1404(a) to transfer this cause of action to the Eastern District of New York, and as grounds therefore states:

1.    This is a products liability and personal injury case for injuries sustained by Plaintiff including, but not limited to, uterine abnormalities as a result of her embryonic exposure to diethylstilbestrol ("DES").

2.    Plaintiff was born in New York and resided the first seventeen years of her life in Commack, New York, which is in the Eastern District of New York.

3.    Plaintiff's mother procured the DES in question from a doctor's office in New York City.

3.    From 1997 to 2005, Plaintiff suffered her injuries while living in various cities in the Eastern District of New York.

4.    Plaintiff's treating physicians for her injuries are all in New York, all but two are in the Eastern District of New York.

5.    Although Plaintiff is now a resident of California, Plaintiff filed this case when she was a New York resident.

1314543-2

6.     New York law applies to this case. All DES cases in the Eastern District of New York are handled by Judge Jack Weinstein, who has adjudicated hundreds of DES cases involving New York law. The Eastern District of New York is a more appropriate jurisdiction to determine New York decisional law.

7.     This case was removed to this Court on July 20, 2007.

8.     At the time this case was removed, discovery was about to close. Defendant Eli Lilly and Company has noted depositions of two of Plaintiff's treating physicians from the Eastern District of New York. Any federal court hearing this case will be hearing it for little more than pretrial motions and trial.

9.     The facts adduced during discovery demonstrate that the District of Columbia's contacts with this case are not as strong as the contacts clustered in the Eastern District of New York.

WHEREFORE, for the above reasons, the reasons stated in the attached Memorandum of Points and Authorities, and for good cause shown, Plaintiff respectfully requests that this action be transferred to the Eastern District of New York.

Respectfully submitted,

/s/ Aaron M. Levine
AARON M. LEVINE, #7864
1320 Nineteenth Street, N.W.
Suite 500
Washington, DC 20036
202-833-8040

· Counsel for Plaintiff

2

## LCvR 7.1(m) CERTIFICATION

Plaintiff requested consent for this motion from defendants Eli Lilly and Company, Person & Covey, GlaxoSmithKline, and Mallinckrodt. Defendants Lilly, GlaxoSmithKline, and Mallinckrodt have refused consent. As of this date, counsel for Defendant Person & Covey has not responded to Plaintiff's request.

/s/ Aaron M. Levine
Aaron M. Levine

3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

~~~~~~~~~~~~~~~~~~~~~~~~~~~~)
CONNIE FRANCO PAVLICAS,              )
                                     )
        Plaintiff,                   )
                                     )        Civil Action No.: 07-1318 (HHK)
    v.                               )        Next Event:
                                     )
ELI LILLY AND COMPANY, et al.,       )
                                     )
        Defendants.                  )
~~~~~~~~~~~~~~~~~~~~~~~~~~~~)

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF HER MOTION TO TRANSFER TO
THE EASTERN DISTRICT OF NEW YORK**

**I.    INTRODUCTION**

Plaintiff Connie Pavlicas brought this suit to compensate for infertility and other injuries

caused by Plaintiff's exposure *in utero* to diethylstilbestrol ("DES") in the state of New York.

New York is the most appropriate location for trial of this case, both for the convenience of the

witnesses and for the interests of justice.

For the vast majority of her life, Plaintiff and her mother lived in the Eastern District of

New York. See Plaintiff's Responses to Defendants' Uniform Requests for Information, pgs. 2-

3, attached as Appendix 1. Plaintiff was exposed to DES purchased and ingested in the state of

New York. See Plaintiff's Responses, pg. 6, App. 1. The majority of Plaintiff's diagnosing and

treating physicians practice in the Eastern District of New York; the remainder practice in New

York City, well within the subpoena power of the Eastern District. See Plaintiff's Responses,

pg. 7, App. 1. Plaintiff was a resident of the Eastern District of New York when she filed this

suit, and asserts claims under New York law. See Complaint, App. 2.

In <u>Albin v. Eli Lilly and Co.</u>, Civil Action No. 04-986 (D.D.C. July 30, 2004), attached as App. 3, the District Court for the District of Columbia granted a DES plaintiff's motion to transfer to the Eastern District of New York where the plaintiff's exposure and some of her medical treatment took place in New York, although the plaintiff was a Canadian resident. Here, Plaintiff's connection to New York is stronger than that in <u>Albin</u>; transfer therefore should be granted.

## II.    STANDARD ON MOTION TO TRANSFER

A transfer under 28 U.S.C. § 1404(a) is to any district where the action might have been brought. Plaintiff could have initially brought this suit in the Eastern District of New York. All defendants are corporations, which are deemed to reside in any district which can exercise personal jurisdiction over them. <u>See</u> 28 U.S.C. § 1391(c). A plaintiff may sue in any district that a defendant resides, if all defendants reside within a state. <u>See</u> 28 U.S.C. § 1391(a)(1).

In diversity, a District Court has the same jurisdiction as the state court in the same area. Defendants either currently conduct significant business within the state to subject them to jurisdiction or are subject to jurisdiction by virtue of having committed a tortious act against Plaintiff in New York, <u>see</u> N.Y. C.P.L.R. § 302. As all Defendants are subject to jurisdiction, and therefore reside, in the Eastern District of New York, this case could be transferred there.

The standard for transfer of venue as set forth by statute is "[f]or the convenience of parties and witnesses, in the interest of justice," 28 U.S.C. § 1404(a), but "[c]ourts have considered various other factors, including the private interests of the parties and the public interests of the court" in construing § 1404. <u>Trout Unlimited v. United States Dep't of Ag.</u>, 944 F. Supp. 13, 16 (D.D.C. 1996).

2

The private interest considerations include, but are not limited to the (1) plaintiff's choice of forum, (2) the defendants' choice of forum, (3) whether the claim arose elsewhere, (4) the convenience of the parties, (5) the convenience of the witnesses, and (6) the ease of access to sources of proof. Trout Unlimited, 944 F. Supp. at 16. The public interest considerations include (1) the familiarity of the transferee forum with the governing laws, (2) the relative congestion of the court calendars, and (3) the local interest in deciding local controversies at home. Id.

### III.   THE EASTERN DISTRICT OF NEW YORK IS MOST CONVENIENT FOR THE WITNESSES

The courts "must afford some deference" to Plaintiffs' choice of forum. Trout Unlimited, 944 F. Supp. at 17. Here, Plaintiffs elect to transfer; the weight of this factor is therefore not in favor of maintaining the present forum. When the current forum has few meaningful ties to or interest in a lawsuit, the court must be "especially cautious" in allowing a case to remain there. Trout Unlimited, 944 F. Supp. at 17. If the forum is not the plaintiff's home forum, and the injury and initial treatment occurred elsewhere, the balance of interests is in favor of transfer. Brannen v. National R.R. Passenger Corp., 403 F. Supp. 2d 89, 93 (D.D.C. 2005) (holding Maryland a more convenient forum where Texas residents were injured in Maryland and received treatment there). This is a New York products liability case where no parties are residents of the District of Columbia. The balance of interests favors transfer to a New York court.

The convenience of witnesses is often considered the most important factor in evaluating a motion to transfer. Altamont Pharmacy, Inc. v. Abbott Lab's, No. 94 C. 6282, 2002 U.S. Dist. LEXIS 759 at *7 (N.D. Ill. 2002), attached as App. 3. In evaluating the convenience of the witnesses, the court considers a number of factors, including "(1) the number of witnesses

3

located in each district; (2) the relative ease of access to sources of proof; (3) the availability of

compulsory process for the attendance of witnesses; and (5) the situs of the material events."

2002 U.S. Dist. LEXIS 759 at *6-7 (N.D. Ill. 2002). Here, there are no witnesses in the District

of Columbia. Within the subpoena power of the Eastern District of New York are all witnesses

and documents relevant to Plaintiff's medical treatment. For example, on August 16, 2007,

Defendants will take the deposition of two of Plaintiff's treating physicians in the Eastern

District of New York. See Amended Notice of Deposition of Burton Krumholz, M.D. App. 4;

Amended Notice of Deposition of David L. Rosenfeld, M.D., App. 5. The Eastern District of

New York is also the site of the material events involving these witnesses, including Plaintiff's

medical treatment. The Eastern District of New York is the more convenient jurisdiction.

A witness's inconvenience is material when the inconvenience may make the witness

unavailable to testify. Brannen, 403 F. Supp. 2d at 94. While Plaintiff's mother is not available

for subpoena by either the District of Columbia or the Eastern District of New York, she will

appear without subpoena; Plantiff's mother has already appeared in Washington, D.C. to be

deposed by Defendants' counsel. Plaintiff's mother is therefore not inconvenienced by transfer

to the Eastern District of New York.

Conversely, it will be more inconvenient to require Plaintiff's treating doctors to leave

New York to testify in the District of Columbia. Should any of them need to be subpoenaed, this

Court does not have the power to do so, unlike the Eastern District of New York.

## IV.    THE EASTERN DISTRICT OF NEW YORK IS THE MOST APPROPRIATE FORUM FOR THE INTERESTS OF JUSTICE

The Eastern District of New York is a much better forum regarding the local interest

factors. "Controversies should be resolved in the locale where they arise." Trout Unlimited, 944

4

F. Supp. at 19. In a diversity case, the public interest factors weigh in favor of having a jury

apply its local laws. See Brannen, 403 F. Supp. 2d at 96. As the Supreme Court noted:

> We pay great deference to the views of the judges of those courts
> who are familiar with the intricacies and trends of local law and
> practice . . .

Bishop v. Wood, 426 U.S. 341, 346 n. 10 (1976).

This Court has no close connection with this case. Although discovery is all but closed

in this case, the case was removed July 20, 2007 and this Court has not yet occupied itself with

the disposition of this case.

New York, the place of Plaintiff's exposure to DES, applies a market share theory to

DES cases. See Hymowitz v. Eli Lilly, 539 N.E.2d 1069 (N.Y. 1989). The Eastern District of

New York has extensive experience in applying New York law regarding DES cases. See, e.g.,

In re DES Cases, 789 F. Supp. 552 (E.D.N.Y. 1992) (discussing New York's DES cases in detail

in reference to consolidated DES litigation). The case would be assigned to Judge Jack

Weinstein, who has a Standing Order referring all Eastern District DES cases to him. Judge

Weinstein has extensive experience in handling DES cases. See In re DES Cases, supra. The

Eastern District of New York is the best district to interpret the market share law underpinning

this case.

## IV. CONCLUSION

The Eastern District of New York is a more appropriate venue for this case. It has

subpoena power over witnesses and documents relevant to Plaintiff Connie Pavlicas's exposure

to DES and has more experience with the governing law. Therefore, Plaintiff requests to transfer

this case to the Eastern District of New York.

Respectfully submitted,


/s/ Aaron M. Levine
AARON M. LEVINE, #7864
1320 Nineteenth Street, N.W.
Suite 500
Washington, DC 20036
202-833-8040

Counsel for Plaintiff

6

**Attachment D**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RISE BAUSCH, et al.,                    }
                                        }
            Plaintiffs,                 }
                                        }
        v.                              }        Civil Action No. 07-1362 (RJL)
                                        }        Next Event:    Scheduling Conference
ELI LILLY AND COMPANY, et al.,          }        November 5, 2007
                                        }
            Defendants.                 }

### PLAINTIFFS' MOTION TO TRANSFER
### TO THE EASTERN DISTRICT OF NEW YORK

COME NOW Plaintiffs, through counsel, and moves this court to transfer this action to the Eastern District of New York pursuant to 28 U.S.C. § 1404(a), and as grounds therefore state:

1. This is a birth defect and products liability suit stemming from Plaintiff Rise Bausch's *in utero* exposure to the drug diethylstilbestrol ("DES").

2. Recent investigation reveals that Rise Bausch was born in the North Country Community Hospital in Glen Cove, New York, in the Eastern District of New York.

3. Recent investigation reveals that Rise Bausch was exposed to DES *in utero* and injured in Levittown, New York. Her mother also was prescribed DES by a Levittown doctor and purchased DES at a pharmacy in Levittown. Levittown is also also in the Eastern District.

4. Defendants' failure to warn, misrepresentations, overpromotion, and breach of warranty regarding DES in this case all occurred in the Eastern District of New York.

1

5.  As the DES warnings, purchase, ingestion, and injury in this case occurred in New York, New York law will apply to this case, and Plaintiff currently proceeds under New York's market share theory of liability.

6.  While this case has some contacts with the District of Columbia (i.e., Defendants' fraud on the Food and Drug Administration), many more contacts exist in and around the Eastern District of New York.  No witnesses reside within the District of Columbia.

WHEREFORE, for the foregoing reasons and for the reasons contained in Plaintiffs' attached memorandum, Plaintiffs respectfully request that this Court, in accordance with 28 U.S.C § 1404(a), enter an Order transferring this matter to the United States District Court for the Eastern District of New York.

Respectfully submitted,

/s/ Aaron M. Levine
AARON M. LEVINE, #7864
1320 Nineteenth Street, N.W.
Suite 500
Washington, DC 20036
202-833-8040
Fax: (202) 833-8046

Counsel for Plaintiffs

## LCvR 7.1(m) CERTIFICATION

Plaintiffs, through counsel, asked Defendants for consent to transfer.  As of this date, Defendants refused consent to transfer.

/s/ Aaron M. Levine
AARON M. LEVINE, #7864

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RISE BAUSCH, et al.,

         Plaintiffs,

    v.

ELI LILLY AND COMPANY, et al.,

         Defendants.

Civil Action No. 07-1362 (RJL)
Next Event:    Scheduling Conference
November 5, 2007

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO TRANSFER TO THE EASTERN DISTRICT OF NEW YORK

### I.    INTRODUCTION

Plaintiffs Rise Bausch and Joseph Bausch bring this suit to recover for damages due to Plaintiff Rise Bausch's prenatal exposure to diethylstilbestrol ("DES"). Rise Bausch was born in Glen Cove, New York; her mother purchased and ingested DES in Levittown, New York. New York law will apply to her case.

No jurisdiction in this case is completely convenient for all witnesses and documents. After investigation, it appears that Plaintiff Rise Bausch, although treated for her DES injuries in New Jersey, Florida, and Utah, the center of this case is New York. It is New York where Defendants failures to test or warn about DES led to the prescription of DES by a New York physician to Rise Bausch's mother and the purchase of DES in a New York pharmacy.

### II.    STANDARD ON MOTION TO TRANSFER

A transfer under 28 U.S.C. § 1404(a) is to any district where the action might have been brought. Plaintiffs could have initially brought this suit in the Eastern District of New York. All defendants are corporations, which are deemed to reside in any district which can exercise

1

personal jurisdiction over them. <u>See</u> 28 U.S.C. § 1391(c). A plaintiff may sue in any district

that a defendant resides, if all defendants reside within a state. <u>See</u> 28 U.S.C. § 1391(a)(1).

In diversity, a District Court has the same jurisdiction as the state court in the same area.

Defendants either currently conduct significant business within the state to subject them to

jurisdiction or are subject to jurisdiction by virtue of having committed a tortious act against

Plaintiff in New York, <u>see</u> N.Y. C.P.L.R. § 302. As all Defendants are subject to jurisdiction,

and therefore reside, in the Eastern District of New York, this case could be brought there.

The standard for transfer of venue as set forth by statute is "[f]or the convenience of

parties and witnesses, in the interest of justice," 28 U.S.C. § 1404(a), but "[c]ourts have

considered various other factors, including the private interests of the parties and the public

interests of the court" in construing § 1404. <u>Trout Unlimited v. United States Dep't of Ag.</u>, 944

F. Supp. 13, 16 (D.D.C. 1996).

## III.    NEW YORK IS A MORE CONVENIENT FORUM

### A.    PUBLIC INTEREST FACTORS

"Controversies should be resolved in the locale where they arise." <u>Trout Unlimited</u>, 944

F. Supp. at 19; <u>see also</u> <u>Pain v. United Technologies Corp.</u>, 637 F.2d 775, 792 (D.C. Cir. 1980).

In a diversity case, the public interest factors weigh in favor of having a jury apply its local laws.

<u>See</u> <u>Brannen</u>, 403 F. Supp. 2d at 96. As the Supreme Court noted:

> We pay great deference to the views of the judges of those courts
> who are familiar with the intricacies and trends of local law and
> practice . . .

<u>Bishop v. Wood</u>, 426 U.S. 341, 346 n. 10 (1976). A state's interest in vindicating its laws and

policies in local courts can only be overridden by "a great benefit." <u>Jackson v. Venture Dep't</u>

<u>Stores</u>, No. 98 C 6216, 1998 U.S. Dist. LEXIS 17508 at *9 (N.D. Ill. Nov. 3, 1998). The Eastern

District of New York is a much better forum regarding the public interest factors.

2

New York law applies to Rise Bausch's claims. This claim was filed in District of Columbia Superior Court, and therefore, District of Columbia choice of law applies to this action, wherever it may be transferred. See, e.g., Frankston v. Aura Systems, Inc., 1995 U.S. App. LEXIS 9006 at *3 (9th Cir. 1995) (applying Massachusetts conflicts law to a case transferred from Massachusetts to California). Generally, District of Columbia choice of law in products liability cases follows the place of purchase. See Long v. Sears Roebuck & Co., 877 F. Supp. 8, 13 (D.D.C. 1995) (applying District of Columbia law to the D.C. purchase by a Maryland resident). DES cases have placed significant importance on the location of the ingestion of.DES and the resulting residence of the infant injured *in utero*. See Tidler v. Eli Lilly and Co., 851 F.2d 418, 420-21 (D.C. Cir. 1988) (stating that "the jurisdiction in which either their [the plaintiffs'] mothers were resident when they took DES or where the plaintiffs' injuries occurred" would be the usual jurisdictions whose law would apply). Since then, the location of the ingestion of DES has been a significant factor in DES cases. See Clayton v. Eli Lilly and Co., 421 F. Supp. 2d 77, 80 (D.D.C. 2006) (stating that the operative events regarding a DES injury as the filling of the prescription and the "use of the drug and plaintiff's *in utero* exposure to DES"); Bortell v. Eli Lilly and Co., 406 F. Supp. 2d 1, 5 (D.D.C. 2005) (holding that the place of injury is where the "malformation of plaintiff's uterus and cervix occurred").

During Rise Bausch's gestation, her mother lived in Levittown, New York. The failures to warn and misrepresentations by the Defendants that led to the prescription of DES to Plaintiff's mother occurred in New York. The reproductive abnormalities that give rise to this suit occurred to Rise Bausch in New York. New York has the prevailing interest in the wrongdoing in this case.

3

Furthermore, New York, the place of Plaintiff Rise Bausch's exposure to DES, applies a market share theory to DES cases. See Hymowitz v. Eli Lilly, 539 N.E.2d 1069 (N.Y. 1989). The Eastern District of New York has extensive experience in applying New York law regarding DES cases. See, e.g., In re DES Cases, 789 F. Supp. 552 (E.D.N.Y. 1992) (discussing New York's DES cases in detail in reference to consolidated DES litigation). The case would be assigned to Judge Jack Weinstein, who has a Standing Order referring all Eastern District DES cases to him. Judge Weinstein has extensive experience in handling DES cases. See In re DES Cases, supra. The Eastern District of New York is the best district to interpret the market share law underpinning this case.

B.    NEW YORK IS A MORE CONVENIENT FORUM FOR WITNESSES AND SOURCES OF PROOF

The convenience of witnesses is often considered the most important factor in evaluating a motion to transfer. Altamont Pharmacy, Inc. v. Abbott Lab's, No. 94 C. 6282, 2002 U.S. Dist. LEXIS 759 at *7 (N.D. Ill. 2002), attached as App. 3. In evaluating the convenience of the witnesses, the court considers a number of factors, including "(1) the number of witnesses located in each district; (2) the relative ease of access to sources of proof; (3) the availability of compulsory process for the attendance of witnesses; and (5) the situs of the material events." 2002 U.S. Dist. LEXIS 759 at *6-7 (N.D. Ill. 2002).

Here, there are no witnesses in the District of Columbia. This case has transactions and witnesses in multiple states, including New Jersey and Florida, but within the subpoena power of the Eastern District of New York are most witnesses and documents relevant to Plaintiff's exposure and medical treatment. Where any jurisdiction may burden witnesses, the weight of the factor of the convenience of the witnesses may be outweighed by the public interest factors. Jackson v. Venture Department Stores, Inc., No. 98 C 6216, 1998 U.S. Dist. LEXIS 17508 at *8 (N.D. Ill. 1998). When liability and damage witnesses are in different states, the balance of

4

convenience weighs in favor of the place where the claim arises. See Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986). The Eastern District of New York is the more convenient jurisdiction.

Defendants all have counsel in New York City, and the national counsel for Defendants Bristol-Myers Squibb Company, Premo Pharmaceutical Laboratories, and Elan Pharmaceuticals are all located in New York City. The transfer of this case will make the case less burdensome for all the parties.

## IV. CONCLUSION

The Eastern District of New York is a more appropriate venue for this case. It has subpoena power over witnesses and documents relevant to Plaintiff Rise Bausch's exposure to DES and has more experience with the governing law. Therefore, Plaintiff requests to transfer this case to the Eastern District of New York.

Respectfully submitted,


/s/ Aaron M. Levine
AARON M. LEVINE, #7864
1320 Nineteenth Street, N.W.
Suite 500
Washington, DC 20036
202-833-8040
Fax: (202) 833-8046

Counsel for Plaintiffs

5

# Attachment E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VICTOIRE DUMONT,          ] | |
|              ] | |
|        Plaintiff,      ] | |
|              ] | **Civil Action No.: 07-CV-01635 (JR/AK)** |
|       v.           ] | **Next Event: Discovery Requests Due** |
|              ] | **January 14, 2008** |
| THE ABBOTT LABORATORIES, INC., ] | |
| et al.,            ] | |
|              ] | |
|        Defendant.    ] | |

## PARTIAL CONSENT MOTION TO TRANSFER TO
## THE EASTERN DISTRICT OF NEW YORK

COMES NOW Plaintiff Victoire Dumont, through counsel, with consent of Defendant

Elan Pharmaceuticals, and moves under 28 U.S.C. § 1404(a) to transfer this cause of action to

the Eastern District of New York, and as grounds therefore states:

      1.     This is a products liability and personal injury case for injuries sustained by

Plaintiff including, but not limited to adenocarcinoma of the vagina and cervix and infertility, as

a result of her embryonic exposure to Diethylstilbestrol ("DES"), and its components.

      2.     Plaintiff was born in France and has resided in Centerport, New York, which is in

the Eastern District of New York, since May 2004.

      3.     Plaintiff suffered many of her injuries, including infertility, while living in

Centerport, New York in the Eastern District of New York.

      4.     Plaintiff's currently treating physician is in New York.  In addition, a number of

other physicians who have examined Plaintiff for her gynecological health are located in New

York, and the laboratories to which these medical providers have submitted Plaintiff's specimens

for testing are located in New York, New York. Accordingly, a majority of the evidence and the fact witnesses are located in New York.

5.  Plaintiff filed this case when she was a resident of Centerport, New York, which is located in the Eastern District of New York.

6.  New York law applies to this case. All DES cases in the Eastern District of New York are handled by Judge Jack B. Weinstein, who has adjudicated hundreds of DES cases involving New York law. The Eastern District of New York is a more appropriate jurisdiction to determine New York decisional law.

7.  A Special Master has been appointed by Judge Jack B. Weinstein in the Eastern District of New York for purposes of settlement of DES cases.

8.  The facts adduced during discovery demonstrate that the District of Columbia's contacts with this case are not as strong as the contacts clustered in the Eastern District of New York.

WHEREFORE, for the above reasons, the reasons stated in the attached Memorandum of Points and Authorities, and for good cause shown, Plaintiff respectfully requests that this action be transferred to the Eastern District of New York.

Respectfully submitted,

/s/ Brandon J. Levine
BRANDON J. LEVINE, (#412130)
1320 Nineteenth Street, N.W.
Suite 500
Washington, DC 20036
202-833-8040

and

2

LAW OFFICES OF SYBIL SHAINWALD, P.C.
111 Broadway, Suite 403
New York, NY
212-425-5566

Counsel for Plaintiff

## REQUEST FOR ORAL HEARING

Pursuant to LCvR 7(f), Plaintiff respectfully requests an oral hearing on this Motion to Transfer.

_____/s/ Brandon J. Levine_____
Brandon J. Levine, (#412130)

## LCvR 7.1(m) CERTIFICATION

Plaintiff requested consent for this motion from Defendants.    Defendant Elan Pharmaceuticals has consented to transfer. The remaining Defendants have refused consent.

_____/s/ Brandon J. Levine_____
Brandon J. Levine, (#412130)

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

VICTOIRE DUMONT,              ]

         ]

     Plaintiff,        ]

         ]

     v.              ]     Civil Action No.: 07-CV-01635 (JR)

         ]     Next Event:

THE ABBOTT LABORATORIES, INC., ]

et al.,             ]

         ]

     Defendant.     ]

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF HER MOTION TO TRANSFER TO
THE EASTERN DISTRICT OF NEW YORK**

**I.    INTRODUCTION**

      Plaintiff Victoire Dumont brought this suit to compensate for cancer, infertility and other injuries caused by Plaintiff's exposure *in utero* to diethylstilbestrol ("DES"). New York is the most appropriate location for trial of this case, both for the convenience of the witnesses and for the interests of justice.

      For the past three years of her life, Plaintiff has lived in the Eastern District of New York. *See* Exhibit A to Declaration of Brandon J. Levine, Esq., (hereinafter "Levine Dec."), the Affidavit of Plaintiff Victoire Dumont (hereinafter "Dumont Aff."). Plaintiff's currently treating physicians practice in New York, well within the subpoena power of the Eastern District. *See id.* Plaintiff was a resident of the Eastern District of New York when she filed this suit, and asserts claims under New York law. *See id.; see also* Levine Dec., Exhibit B (Complaint).

      In Albin v. Eli Lilly and Co., Civil Action No. 04-986 (D.D.C. July 30, 2004), *see* Levine Dec., Exhibit C (case law), the District Court for the District of Columbia granted a DES

1

plaintiff's motion to transfer to the Eastern District of New York where the plaintiff's exposure and some of her medical treatment took place in New York, although the plaintiff was a Canadian resident. Here, Plaintiff is currently a resident of the Eastern District of New York, and all of her recent treatment has taken place in New York. Hence, Plaintiff's connection to New York is stronger than that in Albin, and transfer should be granted.

## II.    STANDARD ON MOTION TO TRANSFER

A transfer under 28 U.S.C. § 1404(a) is to any district where the action might have been brought. Plaintiffs could have initially brought this suit in the Eastern District of New York. All defendants are corporations, which are deemed to reside in any district that can exercise personal jurisdiction over them. See 28 U.S.C. § 1391(c). A plaintiff may sue in any district that a defendant resides, if all defendants reside within a state. See 28 U.S.C. § 1391(a)(1).

In diversity, a District Court has the same jurisdiction as the state court in the same area. Defendants either currently conduct significant business within the state to subject them to jurisdiction or are subject to jurisdiction by virtue of having committed a tortious act against Plaintiff in New York, see N.Y. C.P.L.R. § 302. As all Defendants are subject to jurisdiction, and therefore reside, in the Eastern District of New York, this case could be brought there.

The standard for transfer of venue as set forth by statute is "[f]or the convenience of parties and witnesses, in the interest of justice," 28 U.S.C. § 1404(a), but "[c]ourts have considered various other factors, including the private interests of the parties and the public interests of the court" in construing § 1404. Trout Unlimited v. United States Dep't of Ag., 944 F. Supp. 13, 16 (D.D.C. 1996).

The private interest considerations include, but are not limited to the (1) plaintiff's choice of forum, (2) the defendants' choice of forum, (3) whether the claim arose elsewhere, (4) the

2

convenience of the parties, (5) the convenience of the witnesses, and (6) the ease of access to sources of proof. Trout Unlimited, 944 F. Supp. at 16. The public interest considerations include (1) the familiarity of the transferee forum with the governing laws, (2) the relative congestion of the court calendars, and (3) the local interest in deciding local controversies at home. Id.

**III.    THE EASTERN DISTRICT OF NEW YORK IS MOST CONVENIENT FOR THE WITNESSES**

The courts "must afford some deference" to Plaintiffs' choice of forum. Trout Unlimited, 944 F. Supp. at 17. Here, Plaintiffs elect to transfer; the weight of this factor is therefore militates in favor of transferring the case to the Eastern District of New York. When the current forum has few meaningful ties to or interest in a lawsuit, the court must be "especially cautious" in allowing a case to remain there. Trout Unlimited, 944 F. Supp. at 17. If the forum is not the plaintiff's home forum, and the injury and initial treatment occurred elsewhere, the balance of interests is in favor of transfer. Brannen v. National R.R. Passenger Corp., 403 F. Supp. 2d 89, 93 (D.D.C. 2005) (holding Maryland a more convenient forum where Texas residents were injured in Maryland and received treatment there). This is a New York products liability case where no parties are residents of the District of Columbia. The Eastern District of New York is the Plaintiff's home forum and the current injury and treatment have occurred in New York. This balance of interests favors transfer to a New York court.

The convenience of witnesses is often considered the most important factor in evaluating a motion to transfer. Altamont Pharmacy, Inc. v. Abbott Lab's, No. 94 C. 6282, 2002 U.S. Dist. LEXIS 759 at *7 (N.D. Ill. 2002). In evaluating the convenience of the witnesses, the court considers a number of factors, including "(1) the number of witnesses located in each district; (2) the relative ease of access to sources of proof; (3) the availability of compulsory process for the

3

attendance of witnesses; and (5) the situs of the material events." 2002 U.S. Dist. LEXIS 759 at *6-7 (N.D. Ill. 2002). Here, there are no witnesses in the District of Columbia. New York is the site of the material events involving a majority of the witnesses, including Plaintiff's medical treatment. *See* Dumont Aff. The Eastern District of New York is the more convenient jurisdiction.

A witness's inconvenience is material when the inconvenience may make the witness unavailable to testify. Brannen, 403 F. Supp. 2d at 94. It will be inconvenient to require Plaintiff's treating doctor to leave New York to testify in the District of Columbia. Should Dr. Brownstein, Dr. Yi-Shin Kuo, or Dr. Kelly need to be subpoenaed, this Court does not have the power to do so, unlike the Eastern District of New York.

## IV.    THE EASTERN DISTRICT OF NEW YORK IS THE MOST APPROPRIATE FORUM FOR THE INTERESTS OF JUSTICE

The Eastern District of New York is a much better forum regarding the local interest factors. "Controversies should be resolved in the locale where they arise." Trout Unlimited, 944 F. Supp. at 19. In a diversity case, the public interest factors weigh in favor of having a jury apply its local laws. See Brannen, 403 F. Supp. 2d at 96. As the Supreme Court noted:

> We pay great deference to the views of the judges of those courts who are familiar with the intricacies and trends of local law and practice . . .

Bishop v. Wood, 426 U.S. 341, 346 n. 10 (1976).

This Court has no close connection with this case, and with the exception of a single scheduling conference, this Court has not yet occupied itself with the disposition of this case.

New York, the place of Plaintiff's current injuries, applies a market share theory to DES cases. See Hymowitz v. Eli Lilly, 539 N.E.2d 1069 (N.Y. 1989). The Eastern District of New York has extensive experience in applying New York law regarding DES cases. See, e.g., In re

DES Cases, 789 F. Supp. 552 (E.D.N.Y. 1992) (discussing New York's DES cases in detail in reference to consolidated DES litigation). The case would be assigned to Judge Jack Weinstein, who has a Standing Order referring all Eastern District DES cases to him. Judge Weinstein has extensive experience in handling DES cases. See In re DES Cases, supra. The Eastern District of New York is the best district to interpret the market share law underpinning this case.

## IV. CONCLUSION

The Eastern District of New York is the most appropriate venue for this case. It has subpoena power over witnesses and documents relevant to Plaintiff Victoire Dumont's DES-related injuries and has more experience with the governing law. Therefore, Plaintiff requests to transfer this case to the Eastern District of New York.

Respectfully submitted,

/s/ Brandon J. Levine
BRANDON J. LEVINE (#412130)
1320 Nineteenth Street, N.W.
Suite 500
Washington, DC 20036
202-833-8040

and

LAW OFFICES OF SYBIL SHAINWALD, P.C.
111 Broadway, Suite 403
New York, NY
212-425-5566

Co-counsel for Plaintiff

5

**Attachment F**

# Federal Judicial Caseload Statistics
## March 31, 2007

Office of Judges Programs
Statistics Division
Administrative Office of the United States Courts
Thurgood Marshall Federal Judiciary Building
Washington, D.C. 20544
Telephone: (202) 502-1441
E-Mail: SDInformation@ao.uscourts.gov

**Table C-5.**
**U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases**
**Terminated, by District and Method of Disposition,**
**During the 12-Month Period Ending March 31, 2007**

| Circuit and District | Total Cases | | No Court Action | | Court Action | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Before Pretrial | | During or After Pretrial | | Trial | |
| | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months | Number of Cases | Median Time Interval in Months |
| **TOTAL** | 197,025 | 7.4 | 45,628 | 6.3 | 124,659 | 7.1 | 23,553 | 15.4 | 3,185 | 23.8 |
| DC | 2,127 | 10.7 | 836 | 11.9 | 1,240 | 9.9 | 28 | 18.0 | 23 | 43.0 |
| **1ST** | 5,175 | 9.3 | 1,969 | 7.9 | 2,210 | 8.7 | 853 | 16.0 | 143 | 26.5 |
| ME | 346 | 6.4 | 163 | 5.6 | 157 | 7.9 | 12 | 12.0 | 14 | 15.5 |
| MA | 2,763 | 9.3 | 1,363 | 7.3 | 957 | 8.2 | 359 | 16.8 | 84 | 28.0 |
| NH | 404 | 8.5 | 92 | 3.9 | 133 | 5.9 | 174 | 13.9 | 5 | - |
| RI | 528 | 8.8 | 137 | 6.8 | 246 | 7.0 | 132 | 12.9 | 13 | 22.0 |
| PR | 1,134 | 12.8 | 214 | 6.1 | 717 | 10.1 | 176 | 22.8 | 27 | 33.0 |
| **2ND** | 18,643 | 10.5 | 5,220 | 7.3 | 10,780 | 10.5 | 2,349 | 15.2 | 294 | 29.7 |
| CT | 2,045 | 11.5 | 1,319 | 8.8 | 602 | 16.4 | 69 | 24.0 | 55 | 33.0 |
| NY,N | 1,014 | 12.5 | 218 | 6.2 | 488 | 10.7 | 286 | 19.0 | 22 | 36.0 |
| NY,E | 5,083 | 10.0 | 1,020 | 6.2 | 3,131 | 9.7 | 863 | 15.8 | 69 | 32.7 |
| NY,S | 8,898 | 9.0 | 2,332 | 7.4 | 5,470 | 9.5 | 969 | 12.7 | 127 | 26.3 |
| NY,W | 1,343 | 12.0 | 302 | 6.6 | 876 | 12.5 | 152 | 26.2 | 13 | 48.0 |
| VT | 260 | 9.5 | 29 | 5.0 | 213 | 9.4 | 10 | 23.0 | 8 | - |
| **3RD** | 35,939 | 1.0 | 3,515 | 4.3 | 29,233 | 1.0 | 2,897 | 13.6 | 294 | 24.2 |
| DE | 722 | 14.3 | 97 | 7.0 | 514 | 12.5 | 73 | 24.9 | 38 | 26.7 |
| NJ | 5,466 | 7.3 | 1,875 | 5.2 | 2,129 | 5.5 | 1,398 | 14.3 | 64 | 31.3 |
| PA,E | 25,923 | 1.0 | 596 | 2.8 | 23,937 | 1.0 | 1,275 | 10.3 | 115 | 17.3 |
| PA,M | 1,515 | 7.5 | 477 | 5.5 | 938 | 7.0 | 62 | 20.4 | 38 | 24.0 |
| PA,W | 2,018 | 8.5 | 440 | 4.9 | 1,507 | 9.5 | 32 | 25.0 | 39 | 27.0 |
| VI | 295 | 19.9 | 30 | 6.0 | 208 | 15.5 | 57 | 32.4 | - | - |
| **4TH** | 12,367 | 7.0 | 3,420 | 6.0 | 7,553 | 8.3 | 1,185 | 9.2 | 209 | 19.2 |
| MD | 2,622 | 7.0 | 1,167 | 6.5 | 1,162 | 6.8 | 250 | 8.4 | 43 | 23.5 |
| NC,E | 940 | 11.4 | 398 | 8.1 | 528 | 12.0 | 5 | - | 9 | - |
| NC,M | 720 | 10.7 | 233 | 7.1 | 357 | 12.8 | 118 | 11.2 | 12 | 21.0 |
| NC,W | 929 | 9.3 | 359 | 11.3 | 456 | 5.3 | 100 | 18.0 | 14 | 23.0 |
| SC | 2,696 | 9.4 | 383 | 3.8 | 2,101 | 10.0 | 163 | 12.5 | 49 | 26.0 |
| VA,E | 2,323 | 5.8 | 512 | 3.9 | 1,253 | 5.6 | 514 | 7.8 | 44 | 10.0 |
| VA,W | 704 | 8.2 | 172 | 7.8 | 495 | 9.0 | 18 | 9.0 | 19 | 16.0 |
| WV,N | 403 | 11.8 | 135 | 10.7 | 255 | 12.6 | 9 | - | 4 | - |
| WV,S | 1,030 | 6.3 | 61 | 3.8 | 946 | 6.4 | 8 | - | 15 | 21.5 |

## Table C-5. (March 31, 2007—Continued)

| Circuit and District | Total Cases | | No Court Action | | Court Action | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Before Pretrial | | During or After Pretrial | | Trial | |
| | Number of Cases | Median Time Interval In Months | Number of Cases | Median Time Interval In Months | Number of Cases | Median Time Interval In Months | Number of Cases | Median Time Interval In Months | Number of Cases | Median Time Interval In Months |
| **5TH** | **20,426** | **8.9** | **4,773** | **6.0** | **12,630** | **7.1** | **2,593** | **13.0** | **430** | **21.5** |
| LA,E | 4,203 | 6.3 | 169 | 3.8 | 2,441 | 4.3 | 1,519 | 15.4 | 74 | 20.4 |
| LA,M | 723 | 10.9 | 267 | 6.3 | 416 | 11.5 | 27 | 24.5 | 13 | 23.0 |
| LA,W | 1,544 | 11.0 | 505 | 7.1 | 955 | 12.2 | 43 | 23.0 | 41 | 29.0 |
| MS,N | 845 | 11.8 | 158 | 5.5 | 545 | 11.4 | 115 | 17.4 | 27 | 27.7 |
| MS,S | 2,262 | 8.5 | 1,426 | 8.6 | 748 | 11.5 | 43 | 20.5 | 45 | 18.3 |
| TX,N | 2,899 | 7.9 | 144 | 6.7 | 2,701 | 7.9 | 4 | - | 50 | 21.7 |
| TX,E | 1,645 | 9.5 | 336 | 4.6 | 1,223 | 9.3 | 44 | 13.0 | 42 | 19.0 |
| TX,S | 4,127 | 7.6 | 1,053 | 4.4 | 2,208 | 7.2 | 776 | 10.9 | 90 | 20.6 |
| TX,W | 2,178 | 8.1 | 715 | 6.4 | 1,393 | 8.6 | 22 | 15.0 | 48 | 17.4 |
| **6TH** | **18,811** | **11.8** | **3,642** | **5.8** | **11,440** | **12.7** | **3,430** | **13.1** | **299** | **24.8** |
| KY,E | 1,605 | 10.6 | 195 | 6.3 | 1,377 | 10.2 | 14 | 21.0 | 19 | 19.5 |
| KY,W | 1,155 | 9.0 | 240 | 8.9 | 789 | 8.5 | 110 | 17.3 | 16 | 19.0 |
| MI,E | 3,620 | 8.0 | 787 | 4.8 | 1,286 | 6.6 | 1,479 | 13.8 | 68 | 24.0 |
| MI,W | 888 | 7.8 | 146 | 3.7 | 717 | 8.0 | 9 | - | 16 | 20.0 |
| OH,N | 6,384 | 19.2 | 845 | 4.7 | 4,652 | 19.0 | 837 | 10.0 | 50 | 19.7 |
| OH,S | 2,203 | 12.7 | 873 | 8.9 | 796 | 12.0 | 491 | 14.9 | 43 | 25.5 |
| TN,E | 1,034 | 12.0 | 153 | 7.9 | 397 | 9.9 | 450 | 16.9 | 34 | 25.5 |
| TN,M | 1,028 | 10.9 | 64 | 4.2 | 930 | 10.0 | 9 | - | 25 | 22.0 |
| TN,W | 894 | 12.5 | 339 | 10.4 | 496 | 12.9 | 31 | 24.0 | 28 | 29.4 |
| **7TH** | **12,776** | **7.6** | **3,823** | **5.7** | **7,270** | **8.0** | **1,441** | **11.7** | **242** | **27.5** |
| IL,N | 6,431 | 6.3 | 2,270 | 5.7 | 3,525 | 6.4 | 526 | 12.2 | 110 | 28.7 |
| IL,C | 702 | 10.8 | 296 | 8.2 | 380 | 10.5 | 11 | 23.5 | 15 | 28.0 |
| IL,S | 880 | 8.1 | 243 | 5.3 | 605 | 8.6 | 15 | 16.4 | 17 | 20.5 |
| IN,N | 1,246 | 10.1 | 292 | 6.6 | 646 | 10.2 | 282 | 14.7 | 26 | 22.0 |
| IN,S | 1,942 | 10.8 | 500 | 8.5 | 1,127 | 10.1 | 293 | 13.9 | 22 | 23.4 |
| WI,E | 1,087 | 8.3 | 171 | 3.3 | 787 | 9.2 | 96 | 15.3 | 33 | 66.4 |
| WI,W | 488 | 4.1 | 51 | 1.4 | 200 | 3.3 | 218 | 6.0 | 19 | 11.4 |
| **8TH** | **14,705** | **12.1** | **3,905** | **5.5** | **6,052** | **9.6** | **4,490** | **36.6** | **258** | **21.7** |
| AR,E | 1,242 | 13.5 | 269 | 12.3 | 904 | 13.3 | 8 | - | 61 | 20.0 |
| AR,W | 705 | 10.3 | 32 | 6.7 | 622 | 10.7 | 28 | 1.0 | 23 | 14.0 |
| IA,N | 474 | 9.8 | 53 | 5.5 | 399 | 9.6 | 7 | - | 15 | 20.5 |
| IA,S | 601 | 10.9 | 95 | 7.2 | 329 | 8.8 | 157 | 15.0 | 20 | 21.5 |
| MN | 6,786 | 23.7 | 1,748 | 3.4 | 780 | 5.3 | 4,229 | 36.2 | 29 | 28.5 |
| MO,E | 1,918 | 8.0 | 725 | 8.0 | 1,151 | 7.4 | 4 | - | 38 | 20.0 |
| MO,W | 1,636 | 8.7 | 797 | 7.0 | 805 | 9.0 | 13 | 21.0 | 21 | 23.5 |
| NE | 898 | 11.6 | 33 | 1.0 | 799 | 11.3 | 31 | 20.0 | 35 | 20.5 |
| ND | 204 | 12.4 | 71 | 8.7 | 118 | 12.0 | 4 | - | 11 | 25.0 |
| SD | 241 | 10.8 | 82 | 10.0 | 145 | 10.7 | 9 | - | 5 | - |

## Table C-5. (March 31, 2007—Continued)

| Circuit and District | Total Cases | | No Court Action | | Court Action | | | | | |
| | | | | | Before Pretrial | | During or After Pretrial | | Trial | |
| | Number of Cases | Median Time Interval In Months | Number of Cases | Median Time Interval In Months | Number of Cases | Median Time Interval In Months | Number of Cases | Median Time Interval In Months | Number of Cases | Median Time Interval In Months |
|---|---|---|---|---|---|---|---|---|---|---|
| **9TH** | **28,376** | **8.8** | **10,250** | **6.5** | **16,000** | **8.9** | **1,643** | **13.4** | **483** | **23.7** |
| AK | 335 | 9.9 | 103 | 6.9 | 230 | 10.8 | - | - | 2 | - |
| AZ | 2,005 | 11.6 | 763 | 8.7 | 1,131 | 11.9 | 55 | 21.0 | 56 | 31.5 |
| CA,N | 4,826 | 6.1 | 2,126 | 5.0 | 1,446 | 6.8 | 1,201 | 12.4 | 53 | 27.0 |
| CA,E | 2,279 | 9.5 | 923 | 7.7 | 1,303 | 10.8 | 23 | 22.7 | 30 | 34.0 |
| CA,C | 8,636 | 7.8 | 3,033 | 6.8 | 5,365 | 8.1 | 81 | 19.5 | 157 | 18.9 |
| CA,S | 1,983 | 6.2 | 267 | 4.3 | 1,650 | 6.0 | 40 | 6.8 | 26 | 25.5 |
| HI | 607 | 9.8 | 362 | 7.1 | 193 | 10.8 | 39 | 19.7 | 13 | 16.0 |
| ID | 444 | 12.4 | 30 | 4.3 | 363 | 11.7 | 36 | 20.0 | 15 | 31.0 |
| MT | 522 | 11.0 | 220 | 9.8 | 224 | 10.3 | 62 | 15.9 | 16 | 20.0 |
| NV | 1,531 | 10.0 | 791 | 10.4 | 682 | 9.5 | 43 | 9.5 | 15 | 36.0 |
| OR | 1,874 | 10.5 | 658 | 9.7 | 1,160 | 11.9 | 8 | - | 48 | 23.9 |
| WA,E | 530 | 8.3 | 168 | 5.6 | 321 | 8.5 | 29 | 13.0 | 12 | 23.5 |
| WA,W | 2,746 | 9.4 | 787 | 6.1 | 1,902 | 10.0 | 21 | 16.0 | 36 | 19.0 |
| GUAM | 31 | 7.0 | 11 | 6.0 | 16 | 5.0 | 4 | - | - | - |
| NMI | 27 | 9.0 | 8 | - | 14 | 8.5 | 1 | - | 4 | - |
| **10TH** | **8,072** | **9.1** | **1,394** | **5.4** | **5,161** | **8.5** | **1,337** | **12.1** | **180** | **21.5** |
| CO | 2,034 | 8.6 | 58 | 2.1 | 1,777 | 7.9 | 151 | 18.0 | 48 | 30.5 |
| KS | 1,162 | 9.0 | 357 | 7.7 | 644 | 8.0 | 130 | 18.0 | 31 | 23.0 |
| NM | 1,073 | 9.6 | 135 | 4.2 | 465 | 8.1 | 452 | 11.6 | 21 | 20.4 |
| OK,N | 674 | 10.0 | 70 | 3.8 | 573 | 11.9 | 16 | 19.5 | 15 | 19.0 |
| OK,E | 454 | 8.2 | 319 | 9.0 | 110 | 7.8 | 16 | 11.0 | 9 | - |
| OK,W | 1,237 | 8.0 | 320 | 3.9 | 492 | 7.0 | 403 | 11.0 | 22 | 15.5 |
| UT | 1,137 | 10.2 | 86 | 4.2 | 994 | 10.3 | 36 | 19.7 | 21 | 35.0 |
| WY | 301 | 11.3 | 49 | 5.0 | 106 | 83.4 | 133 | 10.0 | 13 | 15.0 |
| **11TH** | **19,608** | **7.4** | **2,881** | **4.2** | **15,090** | **7.7** | **1,307** | **13.4** | **330** | **20.1** |
| AL,N | 2,956 | 5.2 | 579 | 6.8 | 2,313 | 4.8 | 29 | 21.7 | 35 | 26.0 |
| AL,M | 817 | 10.5 | 227 | 7.2 | 493 | 10.4 | 74 | 17.0 | 23 | 17.4 |
| AL,S | 613 | 8.6 | 120 | 5.4 | 452 | 8.4 | 29 | 16.5 | 12 | 14.0 |
| FL,N | 877 | 7.9 | 236 | 5.2 | 606 | 7.4 | 19 | 14.0 | 16 | 21.0 |
| FL,M | 4,545 | 8.6 | 397 | 4.1 | 3,955 | 8.1 | 114 | 17.5 | 79 | 21.4 |
| FL,S | 5,676 | 5.9 | 563 | 2.7 | 4,727 | 5.1 | 298 | 10.3 | 88 | 17.2 |
| GA,N | 2,943 | 8.6 | 523 | 4.8 | 1,642 | 7.0 | 724 | 12.3 | 54 | 25.5 |
| GA,M | 659 | 11.1 | 136 | 7.9 | 509 | 12.6 | 2 | - | 12 | 22.0 |
| GA,S | 522 | 9.0 | 100 | 5.0 | 393 | 9.5 | 18 | 17.0 | 11 | 23.5 |

NOTE: MEDIAN TIME INTERVALS NOT COMPUTED WHEN FEWER THAN 10 CASES REPORTED. THIS TABLE EXCLUDES LAND CONDEMNATIONS, PRISONER PETITIONS, DEPORTATION REVIEWS, RECOVERY OF OVERPAYMENTS, AND ENFORCEMENT OF JUDGMENTS. FOR FISCAL YEARS PRIOR TO 2001, THIS TABLE INCLUDED DATA ON RECOVERY OF OVERPAYMENTS AND ENFORCEMENT OF JUDGMENTS.